**ALAMO COMMUNITY COLLEGE DISTRICT, Appellant,**

v.

**OBAYASHI CORPORATION, Appellee.**

No. 04–98–00232–CV.

Court of Appeals of Texas, San Antonio.

Aug. 31, 1998.

---

James M. Heidelberg, Nancy H. Reyes, Schulman, Walheim & Heidelberg, Inc., San Antonio, for Appellant.

Donald O. Ferguson, Gardner & Ferguson, Inc., San Antonio, for Appellee.

Before RICKHOFF, STONE and DUNCAN, JJ.

**1.** *Federal Sign v. Texas Southern Univ.,* 951

## OPINION

DUNCAN, Justice.

This interlocutory appeal presents two issues. First, has the Texas Legislature waived sovereign immunity for, and granted its consent to sue, Alamo Community College District? We hold the legislature waived sovereign immunity for ACCD and consented to suits against it by subjecting ACCD and all other community college districts to the same general law governing independent school districts, which are not immune from suit. On this basis alone, we might affirm the trial court's order overruling ACCD's plea to the jurisdiction. We decline to do so, however, because the parties' briefs focus not on whether consent has been granted but whether it is required. Whether consent is required is thus the second issue presented. Specifically, the parties ask us to decide an issue left open by the supreme court's recent opinion in *Federal Sign* [1]: is legislative consent to sue required when a private citizen fully performs its contract with a governmental entity and the governmental entity then breaches the contract by failing to pay the agreed price? We hold legislative consent is not required and therefore affirm the trial court's order denying ACCD's plea to the jurisdiction.

### FACTUAL AND PROCEDURAL BACKGROUND

■ For purposes of a plea to the jurisdiction, we take the factual allegations in the plaintiff's petition as true. *Brannon v. Pacific Employers Ins. Co.,* 148 Tex. 289, 224 S.W.2d 466, 469 (1949). Therefore, for purposes of this appeal, the material facts are undisputed.

ACCD contracted with Obayashi for construction relating to a drainage project at the San Antonio College campus. The base contract price for the project was $983,000. This base price, however, was subject to equitable adjustments for Obayashi's increased costs arising out of material unknown conditions:

### 4.3 CLAIMS AND DISPUTES

S.W.2d 401 (Tex.1997).

4.3.6 Claims for Concealed or Unknown Conditions.... The Architect and [3 D/I, ACCD's Project Manager] will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in [Obayashi's] cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both.....

## 4.4 RESOLUTION OF CLAIMS AND DISPUTES

4.4.1 The Architect will review Claims and take one or more of the following preliminary actions, in consultation with [3 D/I], within ten days of receipt of a Claim: (1) request additional supporting data from the claimant, (2) submit a schedule to the parties indicating when the Architect, in consultation with [3 D/I], expects to take action, (3) reject the Claim in whole or in part, stating reasons for rejection, (4) recommend approval of the Claim by the other party or (5) suggest a compromise.....

4.4.4 If a Claim has not been resolved after consideration of the foregoing and of the further evidence presented by the parties or requested by the Architect, the Architect and [3 D/I] will notify the parties in writing that the Architect's and [3 D/I]'s decision will be made within seven days.

This equitable adjustment clause was included in the contract, at least in part, because ACCD had instructed the prospective bidders not to include in their bids any costs that might arise out of the many underground utility lines that were known to crisscross the campus. Rather, ACCD instructed its bidders, when one of the unknown, underground utility lines was discovered, the additional cost would be dealt with on a case-by-case basis.

After Obayashi completed the contract work, ACCD paid it the base contract price of $983,000. ACCD also paid Obayashi an additional $37,167.51 for four of Obayashi's thirty-two equitable adjustment claims. But the remaining twenty-eight equitable adjustment claims, which totaled $420,538, were not paid or apparently even processed. As a result, Obayashi sued ACCD for this amount under various tort and contract theories.

ACCD answered and ultimately filed a plea to the jurisdiction, which argued all of Obayashi's claims were barred by sovereign immunity because ACCD is an arm of the State of Texas, and the State has not consented to suits against ACCD in general or this suit in particular. The trial court rejected ACCD's argument and, without stating a reason for its ruling, denied ACCD's plea to the jurisdiction. ACCD appealed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.1998) (governmental unit may appeal interlocutory order granting or denying plea to the jurisdiction).

### STATUTORY CONSENT TO SUIT

■ Historically, the State of Texas and its agencies have enjoyed sovereign immunity from suit. *Federal Sign v. Texas Southern Univ.,* 951 S.W.2d 401, 405 (Tex.1997). *"Immunity from suit* bars a suit against the State unless the State expressly gives its consent to the suit." *Id.* (emphasis in original). "Legislative consent for suit ... must be 'by clear and unambiguous language.'" *Id.* (quoting *University of Texas Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex.1994); *Duhart v. State,* 610 S.W.2d 740, 742 (Tex.1980)). However, "[t]he rule requiring a waiver of governmental immunity to be clear and unambiguous cannot be applied so rigidly that the almost certain intent of the Legislature is disregarded." *City of La Porte v. Barfield,* 898 S.W.2d 288, 292 (Tex.1995). "If a statute leaves no reasonable doubt of its purpose, [the supreme court] will not require perfect clarity, even in determining whether governmental immunity has been waived." *Id.* Applying this rule in *Barfield,* the court held the legislature waived the political subdivisions' immunity from suit under the Anti–Retaliation Law even though "the waiver of immunity was not expressed in so many words," because "the inference of waiver ... is unavoidable." *Id.* at 297. We believe the same is true in this case.

ACCD is a junior college community district organized pursuant to chapter 130 of the Texas Education Code. *See* TEX. EDUC.CODE ANN. § 130.162 (Vernon Supp.1998) (defining ACCD service area). Under chapter 130, ACCD's board of trustees' "powers and

duties" "in the ... management and control of the junior college" are governed by "the general law governing the ... management and control of independent school districts insofar as the general law is applicable." *Id.* § 130.084 (Vernon 1991).[2] Part of the "general law" governing the management and control of independent school districts is the Texas Legislature's consent to suits against "[t]he trustees of an independent school district ... in the name of the district...." *Id.* § 11.151(a) (Vernon 1996)[3]; *Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 594 (Tex.App.—Austin 1991, writ denied); *see Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813 (Tex.1970) (statute enabling governmental entity to "sue or be sued" waives immunity from suit).

 ACCD recognizes the relationship between sections 11.151(a) and 130.084 but argues the two sections, when read together, do not establish a waiver of the district's sovereign immunity from suit because the language is not "specific and unambiguous." We agree the waiver is not specific to ACCD, as it is with some universities. *See, e.g.,* TEX. EDUC.CODE ANN. §§ 76.04 (University of Texas at Tyler), 111.33 (University of Houston) (Vernon 1991). But a waiver need not be specific to a particular entity to be "clear and unambiguous," as evidenced by section 11.151(a), which clearly and unambiguously

**2. § 130.084. Powers and Duties**

> The board of trustees of junior college districts shall be governed in the establishment, management and control of the junior college by the general law governing the establishment, management and control of independent school districts insofar as the general law is applicable.
> TEX. EDUC.CODE ANN. § 130.084 (Vernon 1991).

**3. § 11.151. In General**

> (a) The trustees of an independent school district constitute a body corporate and in the name of the district may acquire and hold real and personal property, sue and be sued, and receive bequests and donations or other moneys or funds coming legally into their hands.
> TEX. EDUC.CODE ANN. § 11.151 (Vernon 1996). Section 11.151 is contained in Subchapter D of the Texas Education Code. Subchapter D is entitled "Powers and Duties of Board of Trustees of Independent School District."

waives immunity for all independent school districts.

By subjecting junior college districts like ACCD to the same general law applicable to independent school districts, it appears to us, clearly and unambiguously, the Texas Legislature granted its consent to sue junior college community districts and we so hold.[4]

### THE REACH OF *FEDERAL SIGN*

As noted above, this appeal also presents an issue left open by the Supreme Court of Texas' recent opinion in *Federal Sign:* If a private citizen fully performs its contract with a governmental entity, and the governmental entity then breaches the contract by failing to pay the agreed price, must the private citizen establish a waiver of sovereign immunity by obtaining legislative consent to sue? Not surprisingly, ACCD reads the *Federal Sign* majority opinion broadly, concluding "a private citizen must have legislative consent to sue the State on a breach of contract claim." *Federal Sign,* 951 S.W.2d at 408. Obayashi, on the other hand, relies upon the *Federal Sign* concurring opinion, which suggests a different result might obtain on hypothetical facts almost identical to the allegations in this case because "the State may waive immunity by conduct other than simply executing a contract...." *Id.* at 412–13 (Hecht, J., concurring). Our initial task, therefore, as an intermediate court, is

4. Further evidence of the legislative intent to waive immunity for community college districts inheres in the structure and organization of chapter 130. For instance, but for the entity status, powers, and duties conferred by reference in section 130.084, chapter 130 is devoid of any delineation of the status, powers, and duties of a community college district board. *See* TEX. EDUC. CODE ANN. §§ 130.001–.211 (Vernon 1991 & 1998 Supp.). Moreover, chapter 130 permits a board of trustees of an independent school district that established a junior college to continue to govern, administer, and control the junior college or transfer that authority to a separate board. *Id.* §§ 130.015–.016. ACCD's interpretation of the statutes would thus produce an absurd result— the board of an independent school district could immunize itself from suits involving its junior colleges simply by transferring its authority over those schools to a separate board, thus circumventing the clearly-expressed and longstanding legislative consent to suit against independent school districts.

somewhat delicate: Do we follow the broad language contained in the majority opinion in *Federal Sign* or the suggestion contained in the concurring opinion?

■ We are unable to read the majority opinion as broadly as ACCD suggests for several reasons. First and foremost, despite the broad language quoted above, the majority opinion itself recognizes "[t]here may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract...." *Federal Sign*, 951 S.W.2d at 408 n. 1. Moreover, four of the six justices who joined the *Federal Sign* majority opinion also joined the concurring opinion. *See and compare Federal Sign*, 951 S.W.2d at 403 (Baker, J., joined by Phillips, C.J., and Gonzalez, Hecht, Cornyn, and Owen, JJ.) *with id.* at 413 (Hecht, J., joined by Phillips, C.J., and Cornyn and Owen, JJ., concurring). Under these circumstances, we interpret *Federal Sign* as holding no more than that the State's mere execution of a contract does not waive its sovereign immunity from suit. In compliance with this holding, we hold ACCD did not waive its sovereign immunity from suit in this case merely by executing the contract with Obayashi.

### THE DENIAL OF WRIT IN *FIREMEN'S INSURANCE*

The opinions in *Federal Sign* issued June 20, 1997. On that same day, the court denied the application for a writ of error in a case in which the Third Court of Appeals held a contractor was required to obtain legislative consent to sue even though the governmental entity there involved had certified the project as 97% complete and the project was subsequently completed by the contractor's surety. *Firemen's Ins. Co. of Newark, N.J. v. University of Texas System*, 909 S.W.2d 540, 541 (Tex.App.—Austin 1995, writ denied). From this denial of writ, ACCD argues, "it is clear that immunity of the governmental entity ... does not hinge on the performance of the contract and acceptance of benefits under the contract." We disagree, again for several reasons.

■ First and foremost, the court's denial of an application for a writ of error does not

necessarily reflect the court's approval or even its consideration of the merits of the case. *See, e.g., Willy v. Coastal States Mgt. Co., Inc.*, 41 Tex. S.Ct. J. 1281, 1282, 977 S.W.2d 566, 567 (1998) (Owen, J., joined by Hecht, J., concurring) (concurring in withdrawal of order granting application of writ of error because issue not fully briefed); Elaine A. Carlson & Roland Garcia, Jr., *Discretionary Review Powers of the Texas Supreme Court*, 50 TEX. BAR. J. 1201, 1202 (Dec.1987) ("a 'writ denied' merely means that for whatever reason, four justices did not vote to 'grant' the case"); Ted Z. Robertson & James W. Paulsen, *The Meaning (If Any) of an "N.R.E.,"* 48 TEX. B.J. 1307, 1312 (Dec.1985) (discussing the importance of preservation of error in the decision whether to review a particular case).

■ Additionally, the facts in *Firemen's Insurance* distinguish it from the hypotheticals discussed in the *Federal Sign* concurrence, as well as the facts involved in this case. The contract in *Firemen's Insurance* was certified as only 97% complete, while the facts assumed true in this appeal, as well as one of the concurrence's hypotheticals, rest upon full performance. Likewise, *Firemen's Insurance* involved allegations of delayed and frustrated performance, while the facts of this case and one of the concurrence's hypotheticals involve the failure to pay the contract price, which in this case consisted of the $983,000 base price and the equitable adjustments required by the material concealed and unknown conditions. For these reasons, we decline to read the denial of writ in *Firemen's Insurance* as an implicit rejection of the suggestion in the *Federal Sign* majority and concurring opinions that sovereign immunity may be waived by conduct other than entering a contract, including full performance by the private citizen and refusal to pay the agreed price by the governmental entity.

### WAIVER BY CONDUCT

■ In this case, the same fundamental principles of equity we believe prompted the *Federal Sign* concurring and dissenting opin-

ions lead us to conclude ACCD waived its sovereign immunity to Obayashi's suit by conduct other than merely entering the contract. Specifically, we hold ACCD's waiver of sovereign immunity from suit is established by ACCD's conduct in instructing Obayashi to exclude the costs associated with the underground utility lines from its bid, establishing a contractual means to cover these costs with the equitable adjustment clause, and accepting Obayashi's performance as full and satisfactory, as indicated by its payment of the full base price and four of Obayashi's thirty-two equitable adjustment claims. Under these circumstances, we hold ACCD is estopped from relying upon, and has waived, whatever sovereign immunity from suit it enjoys. If Obayashi succeeds in obtaining a judgment against ACCD, the practical and political concerns discussed in the *Federal Sign* concurrence "can be satisfied through the legislative appropriation process." *Id.* at 417. (Enoch, J., joined by Spector and Abbott, JJ., dissenting).

## CONCLUSION

In accordance with the suggestion in the *Federal Sign* majority and concurring opinions, and for the reasons discussed in the *Federal Sign* dissenting opinion, we hold ACCD waived its sovereign immunity from Obayashi's suit by conduct other than the mere execution of the contract. Alternatively, we hold the Texas Legislature waived ACCD's sovereign immunity from suit by subjecting it to the same general law governing independent school districts, including their power to "sue and be sued." For both reasons, we affirm the trial court's order denying ACCD's plea to the jurisdiction.