TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00572-CV







Edie Crain, Appellant



v.



Smithville Regional Hospital and James W. Langford, Appellees







FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT


NO. 21,979, HONORABLE HAROLD R. TOWSLEE, JUDGE PRESIDING








 This is an appeal from a summary judgment rendered in favor of Smithville
Regional Hospital (the "Hospital") in a suit for damages arising out of the Hospital's termination
of appellant Edie Crain, a former administrator of the Hospital's Rural Health Clinics. The
primary issues presented are: (1) whether a political subdivision that is required to provide
workers' compensation insurance under the Texas Workers' Compensation Act (1) waives its
sovereign immunity when it fails to comply with the Act, and (2) whether a nonsubscribing
employer that is a political subdivision can be sued for acts of retaliation under the Act. We will
affirm the judgment of the district court.



FACTS AND PROCEDURAL BACKGROUND

 Crain was hired by the Hospital in 1991 as an accounting clerk. (2) On January 30,
1994, she was promoted to the position of Administrator of Rural Health Clinics. As an
administrator, Crain's duties included hiring and training personnel, maintaining payroll and time
records for employees, explaining hospital policies and procedures to employees, and general
supervisory duties. She reported directly to the Hospital's chief executive officer, James
Langford. She remained an administrator until her termination from employment on February 13,
1996. 

 The Hospital is a hospital authority created by the City of Smithville pursuant to
Chapter 262 of the Texas Health and Safety Code. See Tex. Health & Safety Code Ann.
§ 262.003 (West 1992). As a political subdivision of the State of Texas, the Hospital is required
to extend workers' compensation benefits to its employees by: (1) becoming a self-insurer; (2)
providing insurance under a workers' compensation insurance policy; or (3) entering into an
interlocal agreement with other political subdivisions providing for self-insurance. (3) While the
Hospital offered its employees group insurance health benefits as well as a separate accident policy
to cover on-the-job injuries, the Hospital did not provide coverage of the type that would qualify
it as a self-insurer under the Act. Because of the separate accident policy, the Hospital contends
that it held a good faith belief that it was self-insured pursuant to the Act. (4)

 In August 1995, the rural health clinic in Bastrop relocated to an office two doors
away. Crain was placed in charge of supervising the move. She consulted with Langford about
the need for assistance to move heavy furniture. Because county jail inmates had helped with a
previous move of the Hospital, Langford suggested that Crain call the county sheriff to see if
inmates were available to assist with the move of the clinic. The sheriff advised Crain that the
inmates could not be used for that purpose. When Crain advised Langford that the inmates could
not assist in the move, he offered no alternatives or assistance.

 On Saturday, August 19, 1995, the move of the clinic took place without the help
of the inmates or professional movers. Clinic employees, along with friends, family members,
and construction workers who were on-site completing their work, assisted with the move. As
Crain, along with two other employees, attempted to move the desk of one of the doctors, Dr.
Phillips, she injured her back. In her deposition, Crain testified that she heard a snap and felt a
stabbing pain in her back. 

 On Monday, August 21, Crain sought medical attention for her back from Dr.
Phillips, her primary care physician under her spouse's group insurance plan. (5) Crain told Dr.
Phillips that she had received the injury from moving or lifting but did not advise him that the
injury was work-related. Crain saw Dr. Phillips again on September 29, 1995, when he found a
possible indication of nerve root irritation. On October 9, he ordered a CT scan on Crain's back. 
Crain alleges that she submitted an accident injury form to the Hospital. 

 In December 1995, Crain contacted the doctor provided by the Hospital's accident
policy but continued to be treated by Dr. Phillips under her spouse's insurance plan. Crain
continued to report for work until she was terminated on February 12, 1996, allegedly due to
complaints from employees and for acts of insubordination. Crain sued the Hospital and
Langford (6) for compensation for the on-the-job injury and for retaliatory discharge for reporting
the injury. The district court granted the Hospital's amended motion for summary judgment.


DISCUSSION AND HOLDINGS

 When summary judgment is based on several different grounds and the trial court
does not state the basis for its decision in the order, the appellate court must affirm the order if
any of the theories advanced in the motion are meritorious. See Carr v. Brasher, 776 S.W.2d
567, 569 (Tex. 1989). Summary judgment is proper where the plaintiff's allegations cannot
constitute a cause of action as a matter of law. See Bradt v. West, 892 S.W.2d 56, 65 (Tex.
App.--Houston [1st Dist.] 1994, writ denied). Summary judgment in favor of the defendant is
proper only if, as a matter of law, the plaintiff could not succeed on any of the theories pleaded. 
See Delgado v. Burns, 656 S.W.2d 428, 429 (Tex. 1983).

 Our analysis begins with a review of appellant's second amended petition. Crain
alleges that after suffering back injuries in an attempt to move a desk, she reported her medical
problems to Langford and the Hospital and "further requested that the Hospital's insurance
company be notified of the injury." She claims that, as a consequence of her request that the
insurance company be notified, she was subjected to retaliation, including termination of her
employment. She further alleges that the Hospital was required to provide workers' compensation
insurance benefits and that because it failed to provide such benefits, it waived its sovereign
immunity and became liable for her injuries and medical expenses without regard to fault. As an
additional cause of action, appellant alleges that the Hospital was negligent because it failed to
provide proper assistance, training, and equipment for the move, and that the Hospital's failure
was a proximate cause of appellant's damages. Appellant also alleges causes of action for
negligence per se and breach of duty of good faith and fair dealing.

 We agree with appellant that the Workers' Compensation Act requires that political
subdivisions provide workers' compensation benefits to their employees. Thus, the Hospital was
required by state law to provide workers' compensation coverage in any one of the three ways
specified in the statute. And, although it had discretion as to how it would fulfill its workers'
compensation requirement, either as a self-insurer, by purchasing workers' compensation
insurance, or by entering into an interlocal agreement with other political subdivisions providing
for self-insurance, it had to cover its employees through one of the means specified in the statute. 
See Wallace v. City of Midland, 836 S.W.2d 641, 642 (Tex. App.--El Paso 1992, writ denied). 

 Crain contends that the Hospital waived its defense of sovereign immunity by
failing to comply with the Act. She argues that the Tort Claims Act does not afford the only
avenue for suit against the Hospital and that the Workers' Compensation Act provides an
independent basis for recovery. The Hospital responds that there is no private cause of action for
failure to provide workers' compensation insurance benefits and that any claim sounding in tort
must fall within the waiver provisions of the Tort Claims Act. 

 A public hospital is a unit of government for purposes of the Tort Claims Act. See
Tex. Civ. Prac. & Rem. Code Ann. § 101.0215 (West Supp. 1999). A hospital district is liable
for damages under a narrow set of circumstances. See Barr v. Bernhard, 562 S.W.2d 844, 846
(Tex. 1978). The Tort Claims Act provides for a waiver of governmental immunity for injuries
arising out of the operation or use of motor vehicles, and personal injuries and death arising out
of a condition or use of tangible property. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021
(West 1997). Whether a governmental unit is immune from liability for a particular claim
generally depends entirely upon statutory law. See Dallas County Mental Health & Mental
Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex.), cert. denied, 119 S. Ct. 541 (1998). 
Absent a waiver of immunity as expressed in the Tort Claims Act, no cause of action exists and
the Hospital is immune. See, e.g., Barr, 562 S.W.2d at 846; Abbott v. City of Kaufman, 717
S.W.2d 927, 930 (Tex. App.--Tyler 1986, writ dism'd). 

 In construing appellant's pleadings, it is significant to note that her petition fails to
mention or invoke the Tort Claims Act in any respect, nor does appellant allege facts sufficient
to invoke a waiver of the Hospital's governmental immunity. See Hein v. Harris County, 557
S.W.2d 366, 369 (Tex. Civ. App.--Houston [1st Dist.] 1977, writ ref'd n.r.e.). Counsel for
appellant acknowledged in oral argument that the injury alleged in the petition was not alleged to
have arisen out of a condition or use of tangible property. 

 Nevertheless, Crain asserts that the Labor Code, which contains the insurance
coverage requirement, provides an independent cause of action for failure to comply with the Act. 
Specifically, appellant refers us to Section 415.008(d), which provides:


Fraudulently Obtaining or Denying Benefits; Administrative Violation


* * *



(d) An employer who has committed an act described by Subsection (a) that results
in denial of payments is liable for the past benefit payments that would otherwise
have been payable by the insurance carrier during the period of denial, plus interest
computed at the rate prescribed by Section 401.023.



Tex. Lab. Code Ann. § 415.008(d) (West 1996). There is no suggestion in the Act, and appellant
cites us to no authority (7) to suggest that the legislature intended, by giving political subdivisions
options to meet the requirement, to waive governmental immunity for non-compliance. It is well
established that for the legislature to waive the State's sovereign immunity, it must do so by clear
and unambiguous statutory language. See Duhart v. State, 610 S.W.2d 740, 742 (Tex. 1980). 
We do not believe it has done so here. 

 In 1989 the legislature enacted the Texas Workers' Compensation Act. It contained
a comprehensive scheme by which employees of subscribing employers are provided with
compensation insurance. The Act devises a system whereby an employee is automatically entitled
to compensation benefits for an injury sustained on the job. Injured employees must obtain relief
solely by means of compensation as provided by the Act. In 1993 the legislature added the
requirement that political subdivisions provide compensation benefits to their employees. See Tex.
Lab. Code Ann. § 504.011 (West 1996). Apart from the administrative process and judicial
review provided, the statutory scheme did not include a waiver of immunity. Indeed, the section
cited above by appellant sets forth penalties for wrongful denial of benefits, (8) and it is found in a
chapter entitled "Administrative Violations." (9)

 Moreover, the interrelationship between the Workers' Compensation Act and the
Tort Claims Act is specifically addressed in Chapter 504 of the Texas Labor Code, entitled
"Workers' Compensation Insurance Coverage for Employees of Political Subdivisions." Section
504.002 provides in part:

Application of General Workers' Compensation Laws; Limit on Actions and
Damages


* * *



(c) Neither this chapter nor Subtitle A authorizes a cause of action or damages
against a political subdivision or an employee of a political subdivision beyond the
actions and damages authorized by Chapter 101, Civil Practice and Remedies
Code.


Tex. Lab. Code Ann. § 504.002 (West 1996). Subtitle A is the Texas Workers' Compensation
Act, and Chapter 101 of the Civil Practice and Remedies Code is the Tort Claims Act. Given this
provision, we think it clear that the legislature did not intend to waive sovereign immunity other
than in the manner expressly provided through the administrative procedures of the Workers'
Compensation Act and the Tort Claims Act. (10) We conclude that the Hospital does not waive its
immunity by failure to comply with the Workers' Compensation Act.

 Crain next contends that she was denied benefits and discharged in retaliation for
reporting her injury in violation of Section 451.001 of the Texas Labor Code. Relying on Texas
Mexican Railway Co. v. Bouchet, 963 S.W.2d 52 (Tex. 1998), the Hospital responds that, because
the Hospital was a nonsubscriber, it cannot be sued under the Act. We hold that Bouchet controls
and that, as a nonsubscriber, the Hospital is not subject to the anti-retaliation provision of the Act.

 The anti-retaliation provision of the Act provides in part:


§ 451.001. Discrimination Against Employees Prohibited 


A person may not discharge or in any other manner discriminate against an
employee because the employee has:


 (1) filed a workers' compensation claim in good faith;

 (2) hired a lawyer to represent the employee in a claim;

 (3) instituted or caused to be instituted in good faith a proceeding under Subtitle
A; or

 (4) testified or is about to testify in a proceeding under Subtitle A.



Tex. Lab. Code Ann. § 451.001 (West 1996). The predecessor law to Section 451.001 (11) was
enacted in 1971 to give protection to workers for exercising their rights under the Act. 
Discrimination most often occurred when the injured worker made a claim, hired an attorney, or
instituted a proceeding to recover damages for an injury. Through then article 8307c, the
legislature prohibited discrimination for the exercise of those rights. See Carnation Co. v. Borner,
610 S.W.2d 450, 453 (Tex. 1980) ("The Legislature's purpose in enacting article 8307c was to
protect persons who are entitled to benefits under the Worker's Compensation Law and to prevent
them from being discharged by reason of taking steps to collect such benefits.") 

 The Texas Supreme Court recently addressed the application of the anti-retaliation
provision in the context of a nonsubscribing employer. The issue presented in Bouchet was
whether an employee can sue an employer who is a nonsubscriber for actions that would violate
section 451.001 of the Labor Code. Bouchet was injured in the course of his employment with
the Texas-Mexican Railway Company. He filed a lawsuit under the Federal Employers Liability
Act ("FELA") for personal injuries. When the Railroad stopped paying certain benefits, Bouchet
amended his complaint and asserted that the Railroad had violated section 451.001 by terminating
benefits after he filed the FELA lawsuit. In upholding the application of the anti-retaliation
provision to the nonsubscribing Railroad, the court of appeals noted that the provision was initially
designed to protect workers against discriminatory actions by employers as a result of making
claims, hiring attorneys, or instituting proceedings to recover damages for injuries. When the
workers' compensation laws were rewritten in 1989, Article 8307c was moved to Section 451.001
of the Labor Code. After examining the history of the statute and its removal to the Labor Code,
the appellate court decided to apply the anti-retaliation provision to nonsubscribers as well as
subscribers. 

 The supreme court reversed the court of appeals' decision. The court concluded
that the legislature's intent was "unmistakable" that the provision was intended to apply only to
employees and employers who act under the Texas Workers' Compensation Act. The court held
that any alleged retaliation by the Railway against Bouchet for filing a claim and hiring a lawyer
to assert that claim was not actionable. Bouchet, 963 S.W.2d at 55. Because only employees of
subscribers to the Act can bring workers' compensation claims, the court concluded that only
subscribers can be subject to the anti-retaliation provision. Id. at 56. The court reiterated its
conclusion in City of LaPorte v. Barfield, 898 S.W.2d 288, 293 (Tex. 1995) that, "Forbidding
retaliation against an employee for seeking monetary benefits under the Worker's Compensation
law presupposes that the employer is a subscriber." Id. at 56 n.4. 

 Appellant seeks to distinguish Bouchet from this case because, she argues, the
Hospital was required to provide workers' compensation in some form and failed to do so. In
addition to the holding in Bouchet with respect to the facts there presented, the supreme court also
addressed cases that had raised the issue in other contexts. Relying on its reasoning in Bouchet,
the supreme court disapproved of both Hodge v. BSB Investments, Inc., 783 S.W.2d 310 (Tex.
App.-- Dallas 1990, writ denied), and Texas Health Enterprises, Inc. v. Kirkgard, 882 S.W.2d
630 (Tex. App.--Beaumont 1994, writ denied), "to the extent that they hold that an employee can
assert an article 8307c claim against an employer that does not subscribe to the Texas Workers'
Compensation Act." Bouchet, 963 S.W.2d at 57. 

 The supreme court has spoken with a clear voice and we are constrained to listen. 
We hold that the Hospital as a nonsubscribing employer cannot be sued for acts of retaliation
under section 451.001 of the Texas Labor Code because the statutory prohibition against
retaliatory discharge provides protection only for workers' compensation claimants who are
proceeding under the Texas Workers' Compensation Act. 

 If there is a gap in the statutory scheme before us that works an unfairness upon the
parties, it is a task that falls upon the legislature to correct. As this Court has stated, "[O]nly the
legislature has the facilities to investigate and ascertain the state of affairs in the complex field of
workers' compensation, to make the necessary adjustment of competing interests, to identify the
objectives and purposes the state should pursue in the matter, and to compose the new rules of
conduct by which these are to be achieved." Texas Workers' Compensation Comm'n v. City of
Bridge City, 900 S.W.2d 411, 415 (Tex. App.--Austin 1995, writ denied).

 We have reviewed appellant's other contentions and, having found them without
merit, overrule them.


CONCLUSION

 Having held that the Hospital does not waive its sovereign immunity by failure to
comply with the Workers' Compensation Act and that, as a nonsubscriber, the Hospital is not
subject to the anti-retaliation provision of the Act, we affirm the judgment of the district court. 



 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: July 15, 1999

Do Not Publish
1. See Tex. Lab. Code Ann. §§ 401.011-506.001 (West 1996 & Supp. 1999) ("the Act").
2. Although many facts are in dispute, we consider the evidence in a light most favorable to
Crain in reviewing the record. When reviewing a summary judgment, we take as true all evidence
favorable to the nonmovant. See Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.
1997); Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280, 282 (Tex. 1996). 
3. See Tex. Lab. Code Ann. § 504.011, .016 (West 1996).
4. Although the record is not entirely clear, it appears that the Hospital had workers'
compensation insurance until 1991. In 1991, the Hospital dropped its workers' compensation
insurance and purchased instead an accident policy covering on-the-job injuries. The policy states
in bold print: "The insurance policy under which this certificate is issued is not a policy of
workers' compensation insurance. You should consult your employer to determine whether your
employer is a subscriber to the workers' compensation system." The policy itself states: "The
Policy is not in place of a Workers' Compensation plan. It does not affect any requirement for
coverage by Workers' Compensation insurance." The Personnel Policy Manual in effect at the
time of the events that form the basis of this lawsuit advised employees as follows: "Smithville
Regional Hospital has elected not to participate in the worker's compensation program."
(Emphasis in original.) Thus, from 1991 to 1997, the Hospital provided accident insurance but
failed to obtain workers' compensation insurance or certification as a self-insurer under the Act. 
Subsequent to the filing of this lawsuit, the Hospital joined the Texas Municipal League
Intergovernmental Risk Pool, but this workers' compensation insurance does not retroactively
cover an on-the-job injury.
5. After appellant's injury, she filed insurance claims under her spouse's policy which paid her
medical bills.
6. Crain later dismissed her claims against Langford.
7. Crain relies on Alamo Community College District v. Obayashi Corp., 980 S.W.2d 745
(Tex. App.--San Antonio 1998, pet. denied), as support for her theory that the Hospital has
waived sovereign immunity by its conduct. Obayashi must be confined to its facts in the context
of an action for breach of contract when a private citizen fully performs the terms of a contract
entered into with a governmental entity. 
8. The Insurance Code also provides for administrative penalties for violation of the Insurance
Code as well as for violations of the Texas Workers' Compensation Act. See, e.g., Tex. Ins.
Code Ann. arts. 5.65C & 5.76-3, § 11 (West 1998).
9. See Tex. Lab. Code Ann. §§ 415.001-.035 (West 1996 & Supp. 1999).
10. Cf. Texas Workers' Compensation Comm'n v. Texas Builders Ins. Co., No. 3-98-341-CV
(Tex. App.--Austin June 17, 1999, no pet. h.) (not yet published).
11. Tex. Rev. Civ. Stat. Ann. art. 8307c, since repealed and codified at Tex. Lab. Code Ann.
§§ 451.001-.003 (West 1996 & Supp. 1999). 



." Texas Workers' Compensation Comm'n v. City of
Bridge City, 900 S.W.2d 411, 415 (Tex. App.--Austin 1995, writ denied).

 We have reviewed appellant's other contentions and, having found them without
merit, overrule them.


CONCLUSION

 Having held that the Hospital does not waive its sovereign immunity by failure to
comply with the Workers' Compensation Act and that, as a nonsubscriber, the Hospital is not
subject to the anti-retaliation provision of the Act, we affirm the judgment of the district court. 



 

 Jan P. P