REVISED JANUARY 16, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-11398

_____

ANN TENISON HEREFORD WEBB; LIZANN TENISON WEBB; BYRON JAMES
WEBB; CAMILLE ELIZABETH WEBB SEWELL

Plaintiffs - Appellees

v.

CITY OF DALLAS, TEXAS; CITY OF DALLAS PARKS AND RECREATION
DEPARTMENT; CITY OF DALLAS PARKS & RECREATION BOARD; PAUL
DYER, Director, City of Dallas Parks & Recreation Department

Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas

December 16, 2002

Before KING, Chief Judge, and JOLLY and HIGGINBOTHAM, Circuit

Judges.

KING, Chief Judge:

This interlocutory appeal requires us to decide whether, as

the district court held, Defendants are immune from suit based on

Texas's doctrine of sovereign immunity. Resolution of this

question requires us to first decide whether the Plaintiffs have

constitutional standing to sue. Because we agree that Plaintiffs

have asserted a claim in this controversy sufficient to satisfy

Article III's minimum constitutional standing requirements and that

state sovereign immunity from suit does not bar Plaintiffs' claims against Defendants, we affirm the order of the district court to the extent that it denied Defendants' sovereign immunity from suit.

## I.  FACTS AND PROCEDURAL BACKGROUND

### A.  The Parties Involved and Legal Instruments at Issue

This case involves a dispute regarding deed restrictions on property donated to the City of Dallas.  Edward O. and Annie M. Tenison ("the Tenisons") had four children.  Their son, Edward Hugh Tenison, predeceased his parents.  Edward Hugh Tenison was survived by two children, Elizabeth Ann Tenison and Edward Hugh Tenison, Jr. Elizabeth Ann Tenison was the grandmother of Plaintiff-Appellee Ann Tenison Hereford Webb and the great-grandmother of Plaintiffs-Appellees Lizann Tenison Webb, Byron James Webb and Camille Elizabeth Webb Sewell (together, the "Webbs").  Hence, the Webbs are the great-grandchildren and great-great-grandchildren of the Tenisons.

On December 12, 1922, Edward O. Tenison executed his will, in which he bequeathed $25,000 to each of his three living children: Mrs. Cruger T. Smith, Mrs. Dan M. Craddock and Mr. James C. Tenison.  The will also created separate trusts in the amount of $25,000 for each of his three grandchildren, including Elizabeth Ann Tenison.  Edward O. Tenison left the "rest, residue, and remainder" of his estate to his wife, Annie M. Tenison.  At the time he executed the will, the Tenisons owned the land that is the

subject of the current dispute.

On March 23, 1923, the Tenisons deeded 78.8 acres of real estate located between East Grand Avenue and East Pike Road to the City of Dallas in memory of their son, Edward Hugh Tenison. The deed included the following restriction,

> But this conveyance is made for the purposes of a public park only, and upon the express condition that the property shall always be used by the City of Dallas, for the purposes of a public park for the use and enjoyment of the people of the City of Dallas, and for such purposes exclusively. Said park shall be known and designated for all time as "Tenison Park." And if said property, or any part thereof, shall not be used for the purposes of a Public Park, or if said property, or any part thereof, shall be used for any purpose other than public park purposes as above provided for, or should the name of said park be changed from the above designated, then and in each such event the right and title of the City of Dallas to the property hereby granted shall cease, and said property and all right and title thereto shall at once revert to and vest in us or our heirs, and it shall be lawful for us or our heirs to re-enter upon, take, repossess and enjoy all and singular the property hereby granted as in our former estate.

On March 29, 1923, the Tenisons donated a second tract of land to the City of Dallas under the same terms and conditions as the first conveyance.

Edward O. Tenison died in 1924. On October 5, 1925, Annie M. Tenison executed a will, providing that,

> [The] rest, residue and remainder of the property of which I may die seized or possessed, or to which I may be entitled at the time of my death, whether real, personal or mixed, and wheresoever situated, I give, devise and bequeath to my beloved children, Mrs. Cruger T. Smith, Mrs. Dan M. Craddock, and James Charles Tenison.

Annie M. Tenison died in 1927.

B.    The Current Dispute

As the grantee under the deeds, the City of Dallas operated two municipal golf courses on the property known as Tenison Park. In 1998, the Dallas City Council approved a plan to redesign the Tenison Park West Course, and the renovated golf course was opened for business in October 2000. The Webbs allege that rising green fees effectively excluded certain citizens from the use and enjoyment of the property and that the name of the property was also changed from "Tenison Park" to "Tenison Highlands."

On November 22, 2000, the Webbs filed suit in federal court against the City of Dallas, its Parks and Recreation Department and Parks and Recreation Board and Park Director Paul Dyer, in his official capacity (together the "City"). In general, the Webbs claimed that the City "t[ook] said property and ha[ve] not used and expressed intention not to use the property for purposes of a public park." More specifically, in their First Amended Complaint, the Webbs sought a reverter of the property to them as heirs of the Tenisons, a declaration that they have the right to immediately reenter upon and take possession of the property, damages for breach of the Dallas City Charter and Texas trust law and an accounting of all profits realized by the City's activities from November 1999 through the date of final judgment in this case. The Webbs further generally claimed, without particularizing the specific relief sought, relief under a state trespass to try title

cause of action.

The Webbs moved for partial summary judgment on their claims for declaratory relief, trespass to try title and right of reverter. The City moved for summary judgment on the basis that the Webbs are not legally entitled to enforce restrictions in the deeds and moved for judgment on the pleadings on the basis that the doctrine of sovereign immunity precludes the Webbs from bringing suit against the City.

### C.    The District Court Decision

On October 4, 2001, the United States Magistrate Judge recommended that the district court deny all pending motions in this case. By order dated October 17, 2001, the district court adopted the "Findings and Recommendation of the United States Magistrate Judge," effectively denying the City's motion for summary judgment and for judgment on the pleadings.

The City appeals the district court's order denying its motion.

### II.    STANDARD OF REVIEW

This court reviews de novo the denial of a summary judgment motion based on standing.[1] This court also reviews de novo the denial of a motion for judgment on the pleadings based on state

---

[1]    Ass'n of Cmty. Orgs. for Reform Now v. Fowler, 178 F.3d 350, 356 (5th Cir. 1999).

sovereign immunity.[2]  In adjudicating a motion for judgment on the pleadings, the court may look only to the pleadings and must accept all facts pleaded therein as true.[3]

## III.    ARTICLE III STANDING AND STATE SOVEREIGN IMMUNITY

The issues before the court on appeal are (1) whether the Webbs claim an interest in the property sufficient to satisfy the jurisdictional injury-in-fact requirement of Article III, and (2) whether, even if Article III standing is found, the City is nevertheless immune from suit under the doctrine of sovereign immunity.  Regarding the City's argument that the Webbs lack a legal interest to sue as "heirs" under the deeds, the district court specifically determined that genuine issues of material fact exist as to whether the Webbs are legal "heirs" of the Tenisons, as that term is used in the relevant deeds.  Regarding the City's argument that Texas's sovereign immunity doctrine immunizes it from the present suit, the district court concluded that the City waived immunity from both suit and liability.  On appeal, the City contends that the Webbs have not satisfied the injury-in-fact requirement for this court to have Article III jurisdiction and that it has not waived immunity from suit such that subject matter jurisdiction to entertain the merits of the Webbs' claims is

---

[2]    PYCA Indus., Inc. v. Harrison County Waste Water Mgmt. Dist., 81 F.3d 1412, 1417-20 (5th Cir. 1996).

[3]    St. Paul Fire & Marine Ins. Co. v. Convalescent Serv., Inc., 193 F.3d 340, 342 (5th Cir. 1999).

present.

## A.    Standing under Article III

Initially, we must conclude that we have jurisdiction under Article III of the United States Constitution before proceeding to the merits of the City's claim of sovereign immunity from suit.[4] In response to the City's motion for summary judgment that the Webbs do not possess a right to enforce the deed restrictions as "heirs" when the residuary clause in Annie M. Tenison's will left the "rest, residue and remainder" of her property to her three children, the district court found that "genuine issues of material fact as to whether plaintiffs are the 'heirs' of Edward O. and Annie M. Tenison, as that term is used in the Tenison deeds," precluded summary judgment. On appeal, we are not called upon to review the merits of the district court's summary judgment determination regarding the Webbs' alleged ownership rights. Rather, in order to review the discrete sovereign immunity question on appeal, we must only determine that the minimum constitutional requirements for standing are satisfied.[5]

The Webbs are not direct descendants of the named beneficiaries

---

[4]    See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-94 (1998); Calderon v. Ashmus, 523 U.S. 740, 745 & n.2 (1998); House the Homeless, Inc. v. Widnall, 94 F.3d 176, 179 n.7 (5th Cir. 1996).

[5]    Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978) (discussing the Cohen doctrine and the limited jurisdiction of an appellate court to review "an important issue completely separate from the merits of the action.").

of the residuary clause of Annie M. Tenison's will. Moreover, neither of the Tenison wills specifically references the future interest created by the Tenison Park conveyances to the City. Nevertheless, in their First Amended Complaint, the Webbs have undoubtedly asserted an interest in this property dispute sufficient to satisfy the injury-in-fact jurisdictional requirement of the Article III standing doctrine.

Standing to sue is the "core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."[6] To invoke federal jurisdiction, the Webbs are required to allege facts demonstrating that they have suffered an injury-in-fact — an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.[7] This requirement is part of the "irreducible constitutional minimum" required to establish Article III standing.[8]

Here, the Webbs have asserted a "personal stake" in the dispute that is concrete and particularized.[9] As alleged, the

---

[6]     Id. at 103-04.

[7]     Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Gore, Inc. v. Espy, 87 F.3d 767, 771 (5th Cir. 1996).

[8]     Riley v. St. Luke's Episcopal Hosp., 196 F.3d 514, 532 (5th Cir. 1999).

[9]     Raines v. Byrd, 521 U.S. 811, 818 (1997).

conduct of the City in violating the deed restrictions has affected the Webbs in a personal, individual and particularized way because as "heirs" under the deeds, they have a personal stake in seeing that the City adheres to the restrictions on the use of the Tenison property.[10]

The Webbs may ultimately fail to prove ownership or any property interest entitlement to the Tenison property. Facially, however, the First Amended Complaint (including its reference to the express language of the relevant deeds) avers that the Webbs suffered a concrete constitutional injury-in-fact by the City's failure to operate the Tenison property in accordance with the deed restrictions and that through the express conveyance of a fee simple subject to a condition subsequent, the Webbs can now redress this injury by exercising their right of reentry as "heirs."[11] These allegations assert an interest in the property dispute sufficient to meet the minimum constitutional requirements of Article III.

**B.    Sovereign Immunity**

Having dispensed with the question whether the Webbs have constitutional standing to pursue their claims, we now turn to the

---

[10]    Id.

[11]    See Lawyers Trust Co. v. City of Houston, 359 S.W.2d 887, 890 (Tex. 1962) (discussing the characterization of a fee simple determinable and a fee simple subject to a condition subsequent); Gutierrez v. Rodriquez, 30 S.W.3d 558, 560 (Tex. App.– Texarkana 2000, no pet.).

question whether the City has waived immunity from suit.

In answering a question where, as here, jurisdiction is based on diversity of citizenship, we have a duty to apply the forum state's jurisprudence.[12] Further, where, as here, we are asked to resolve a sovereign immunity question in a diversity of citizenship case, we must defer to the sovereign immunity law of the forum state.[13]

Under Texas law, immunity from liability and immunity from suit are two distinct principles.[14] Immunity from liability protects the State from a judgment against it even if the State legislature has expressly consented to suit; in contrast, immunity from suit bars an action against the State unless the State expressly consents to suit.[15] The City concedes that it waived immunity from liability by accepting the deed-restricted conveyance of land from the Tenisons. It thus only asserts immunity from suit, not liability.

We note at the outset that under Texas law, a suit against a municipality or its agencies arising out of the performance of its governmental duties or to recover for alleged breach of a contract is deemed to be a suit against the State of Texas for purposes of

---

[12] Erie R. Co. v. Tompkins, 304 U.S. 64, 79-80 (1938).

[13] Tompkins v. El Paso, 449 F.2d 842, 844 (5th Cir. 1971).

[14] Id. at 405.

[15] Id.

state sovereign immunity unless some special exception applies.[16] The Webbs principally aver that immunity from suit has been expressly waived by statute and by express provisions of the Dallas City Charter and, alternatively, that immunity from suit has been waived by the City's conduct in accepting the deed-restricted conveyances here. The City disagrees with both arguments.

Before turning to the question of waiver of immunity from suit under Texas law, however, we briefly address the Webbs' initial contention that the doctrine of sovereign immunity does not even apply to the instant lawsuit because this is an action in rem to recover title to and possession of land.

### 1. In Rem Proceeding

The Webbs essentially contend that sovereign immunity does not bar this proceeding because they are simply seeking a declaration of what already belongs to them. It is true that an entity or person whose rights have been violated by the unlawful action of a state official may bring suit against that state official, individually, to remedy the violation or prevent its occurrence and that such a suit is not a suit against the State requiring statutory authorization because the conduct of the agent or

---

[16] See Federal Sign v. Tex. S. Univ., 951 S.W.2d 401, 408 (Tex. 1997); Gates v. City of Dallas, 704 S.W.2d 737, 738 (Tex. 1986); Cranford v. City of Pasadena, 917 S.W.2d 484, 487 (Tex. App. – Houston [14th Dist.] 1996, no writ); Avmanco, Inc. v. City of Grand Prairie, 835 S.W.2d 160, 165 (Tex. App. – Fort Worth 1992, writ dism'd as moot).

official is unauthorized and thus "ultra vires."[17] However, the claims raised by the Webbs do not fall within this narrow class of claims excepted from the general rule requiring statutory authorization to maintain a suit against the State.[18] The Webbs have not sued officials in their individual capacities, and the Texas Supreme Court has clearly held that suits against the State or its agencies for title to land or suits against the State or its agencies seeking injunctive relief to enforce contractual rights

---

[17] See, e.g., Tex. Highway Comm'n v. Tex. Assoc. of Steel Importers, Inc., 372 S.W.2d 525, 530 (Tex. 1963) (concluding that legislative consent was not required to bring a declaratory judgment suit against the Highway Commission); Cobb v. Harrington, 190 S.W.2d 709, 712 (Tex. 1945) (holding that legislative consent was not required for a declaratory judgment suit against the State Comptroller to determine the constitutionality of a tax statute).

[18] See, e.g., Tex. Natural Resource Conservation Comm'n v. IT - Davy, 74 S.W.3d 849, 861 (Tex. 2002) (making clear that a plaintiff cannot circumvent the doctrine of sovereign immunity by seeking declaratory relief that essentially resolves a breach of contract issue); Federal Sign v. Tex. S. Univ., 951 S.W.2d 401, 408 (Tex. 1997) (holding that a suit seeking injunctive relief to enforce contractual rights is necessarily a suit against the State that cannot be maintained without legislative permission); State v. Lain, 349 S.W.2d 579, 582 (Tex. 1961) (concluding that a suit for title to land against the State or its agency cannot be maintained without legislative consent); Herring v. Houston Nat'l Exchange Bank, 253 S.W. 813, 814 (Tex. 1923) (stating that a suit against state officers to require them to perform a contract by the State or to establish the validity of a contract by the State is a suit against the State itself); Tex. Parks & Wildlife Dept. v. W.M. Callaway, 971 S.W.2d 145, 152 (Tex. App. – Austin 1998, no writ) (holding that "[a]llthough [plaintiff's] request for declaratory relief is not premised expressly on breach of contract," legislative consent is still required because, in essence, the plaintiff is seeking a declaration of his rights under the easement and an order enforcing those rights).

are necessarily suits against the State requiring legislative authorization to sue.[19] Further, we note that in addition to injunctive and declaratory relief, the Webbs also seek legal relief in the form of an accounting and money damages for the City's alleged breach of the covenants and of the Dallas City Charter. Thus, their in rem distinction is misplaced.[20]

## 2. Express Waiver of Sovereign Immunity

The Webbs persuaded the district court that the City had expressly waived its immunity from suit. The Texas Local Government Code states that home-rule municipalities, such as the City of Dallas, "may plead and be impleaded in any court."[21] Further, the Dallas City Charter states that the City of Dallas shall have the power "to sue and be sued."[22] The Dallas City

---

[19] IT - Davy, 74 S.W.3d at 861; Federal Sign, 951 S.W.2d at 408; Lain, 349 S.W.2d at 582.

[20] See, e.g., Federal Sign, 951 S.W.2d at 404-05 (claimants seeking both equitable and legal relief were required to secure legislative consent to sue the state agency).

[21] Section 51.075 of the Texas Local Government Code, entitled "Authority Relating to Lawsuits," states that "[t]he municipality may plead and be impleaded in any court." TEX. LOCAL GOV'T CODE ANN. § 51.075 (Vernon 1999).

[22] Section 1(2) of Chapter II, entitled "Powers of the City," of the Dallas City Charter provides, in relevant part, that,

The City of Dallas, as such body politic and corporate, shall have perpetual succession and shall have the following powers:
(1) to use a corporate seal;
(2) to sue and be sued;

Charter provision does not restrict the forum for suits against the City to courts of the State.[23]  The district court relied on these two provisions to find an express waiver of sovereign immunity from suit here.  The City argues this conclusion is in error, contending that the code and charter provisions relied on by the district court are simply confirmations that the City of Dallas has the corporate capacity to sue and be sued.  Alternatively, buttressing its argument with four state decisions from Texas courts of appeals, it seeks to have this court certify the express waiver issue to the Texas Supreme Court as an "unsettled" question of state law.

In <u>Missouri Pacific Railroad Co. v. Brownsville Navigation District</u>,[24] the Texas Supreme Court held that a statute with language similar to that found in § 51.075 and the Dallas City Charter provision waived immunity from suit.  The statute in that case states that,

> All navigation districts . . . <u>may sue or be sued</u> in all courts of this state in the name of such navigation district, and all courts of this state shall take

---

(3)  to plead and be impleaded in all courts;
(4)  to institute and prosecute suits without giving security therefore, and to appeal from judgments of the courts . . . .

Dallas, Tex., Charter ch. II, § 1(2) (1999).

[23]  <u>Id.</u>

[24]  453 S.W.2d 812 (Tex. 1970).

judicial notice of the establishment of all districts.[25]

The Texas Supreme Court stated that this language "quite plain[ly]" "gives general consent for District to be sued in the courts of Texas" such that immunity from suit is expressly waived.[26]

More recently, in Travis County v. Pelzel & Assoc.,[27] the Texas Supreme Court again addressed whether a statute "clearly and unambiguously" waives the State's immunity from suit. Section 89.004(a), entitled "Presentation of Claim," provides that "[a] person may not sue on a claim against a county unless the person has presented the claim to the commissioners court and the commissioners court has neglected or refused to pay all or part of the claim."[28] The court held that this language did not waive Travis County's immunity from suit because the statute did not state clearly and unambiguously that Travis County could be sued. Rather, the court found that the provision just as easily could simply create a condition precedent to suit.[29] Important to this conclusion was the finding that the original statutory language providing that the county may "sue and be sued" was deleted in 1879

---

[25]    Id. at 813 (emphasis added).

[26]    Id.

[27]    77 S.W.3d 246 (Tex. 2002).

[28]    TEX. LOCAL GOV'T CODE ANN. § 89.004(a) (Vernon 1999).

[29]    Pelzel, 77 S.W.3d at 250.

to leave text "largely resembling the current statute" in place.[30] As stated by the Texas Supreme Court, "well over a hundred years ago, the Legislature deleted the only language arguably waiving sovereign immunity, suggesting that it intended to preserve counties' immunity from suit."[31] In so concluding, the court discussed Missouri Pacific in some detail. However, it did not overrule its prior holding. Instead, the Pelzel court distinguished the less-than-clear legislative expression of waiver in the "Presentation of Claim" statute from the "sue and be sued" language applicable to navigation districts found by the Missouri Pacific court to "quite plain[ly]" waive immunity from suit.[32]

As stated, the City asserts that four Texas courts of appeals have held that similar "sue and be sued" provisions do not waive the State's immunity from suit.[33] While this is an accurate statement of Texas law, it is a well-settled principle that in diversity cases, we "seek guidance by looking to the precedents established by intermediate state appellate courts" only when the

---

[30]    Id. at 249-50.

[31]    Id. at 250.

[32]    Id.

[33]    See, e.g., City of Dallas v. Reata Constr. Corp., 83 S.W.3d 392, 398 (Tex. App. – Dallas 2002, no pet.); Jackson v. City of Galveston, 837 S.W.2d 868, 871 (Tex. App. – Houston [14th Dist.] 1992, writ denied); Townsend v. Memorial Med. Ctr., 529 S.W.2d 264, 267 (Tex. Civ. App. – Corpus Christi 1975, writ ref'd n.r.e.); Childs v. Greenville Hosp. Auth., 479 S.W.2d 399, 401 (Tex. Civ. App. – Texarkana 1972, writ ref'd n.r.e.).

state supreme court has not spoken on an issue or there has been some intervening change in the law that requires us to make an Erie guess regarding how the Texas Supreme Court would most likely decide an issue.[34] Here, the Texas Supreme Court has addressed the question we are called upon to now answer, and the state appellate court decisions cited by the City do not persuade us to veer from this precedent. The cases cited by the City, for the most part, either follow pre-Missouri Pacific law or completely fail to mention Missouri Pacific.[35] Moreover, as argued by the Webbs, the City's argument that the "sue and be sued" provision is just a recognition of its corporate capacity to sue and be sued is also belied by the fact that the vast majority of state courts of appeals to address the express legislative waiver question in the context of similar "sue and be sued" clauses follow Missouri

---

[34] Howe v. Scottsdale Ins. Co., 204 F.3d 624, 628 (5th Cir. 2000); see also Herrmann Holdings Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 558 (5th Cir. 2002) ("[I]n deciding this case, we are required to make an Erie guess as to what the Texas Supreme Court would most likely decide.")

[35] See, e.g., Reata Constr. Corp., 83 S.W.3d at 398 (following Jackson (discussed infra) without citing to Missouri Pacific, to find the "sue and be sued" provision "simply speak[s] to the City's capacity to sue and its capacity to be sued when immunity has been waived.") (emphasis in original); Jackson, 837 S.W.2d at 871 (simply following Townsend (discussed infra) without analysis; Townsend, 529 S.W.2d at 267 (relying solely on Childs (discussed infra), which, in turn, relied solely on cases decided before Missouri Pacific, to hold that a hospital district is immune from suit despite a "sue and be sued" statutory provision); Childs, 479 S.W.2d at 401 (relying on pre-Missouri Pacific cases to find, without discussion, no waiver of immunity from suit).

<u>Pacific</u> as controlling Texas Supreme Court precedent.[36]

We find controlling Texas Supreme Court authority for the district court's holding that the City has expressly waived its immunity from suit in this case and see no need to certify the

---

[36] <u>See, e.g.</u>, <u>Tarrant County. Hosp. Dist. v. Henry</u>, 52 S.W.3d 434, 448 (Tex. App. – Fort Worth 2001, no pet.) ("It is well settled that this type of [sue and be sued] statutory provision is a consent to suit, resulting in waiver of immunity from suit."); <u>Alamo Comm. Coll. Dist. v. Obayashi Corp.</u>, 980 S.W.2d 745, 748 (Tex. App. – San Antonio 1998, pet. denied) (stating that "[b]y subjecting junior college districts [] to the same general law applicable to independent school districts [through a provision that states the district can sue and be sued], it appears to us, clearly and unambiguously, the Texas Legislature granted its consent to sue junior college community districts and we so hold"); <u>Engelman Irrigations Dist. v. Shields Bros., Inc.</u>, 960 S.W.2d 343, 347 (Tex. App. – Corpus Christi 1997) (finding that the irrigation district was not entitled to immunity from suit because of a "sue and be sued" clause), <u>pet. denied per curiam</u>, 989 S.W.2d 360 (Tex. 1998); <u>Knowles v. City of Granbury</u>, 953 S.W.2d 19, 23 (Tex. App. – Fort Worth 1997, pet. denied) ("As a home-rule municipality, Granbury may sue and be sued. Had it wanted to exempt itself from liability, it could have . . . Because the Local Government Code and Granbury's charter provide that the city may be sued, its immunity from suit is [] waived."); <u>Avmanco, Inc. v. City of Grand Prairie</u>, 835 S.W.2d 160, 165 (Tex. App. – Fort Worth 1992, writ dism'd as moot) ("While there is no general law waiving the State's immunity from suit where liability is sought because of breach of contract, the City is liable here because both the State and the City have enacted legislation providing their respective consents to suits against the City. Furthermore, the city charter of Grand Prairie itself provides that the City may sue and be sued."); <u>Dillard v. Austin Indep. Sch. Dist.</u>, 806 S.W.2d 589, 593 & n.3 (Tex. App. – Austin 1991, writ denied) (concluding that through a "sue and be sued" provision, the Texas Legislature gave its consent for an independent school district to be sued).

question of express waiver to the Texas Supreme Court.[37]  Express legislation provides that the City may be sued.  As a home-rule municipality, the City may exempt itself from suit.  It has not done so here.

As its resolution is not essential to our holding, we do not address the Webbs' final argument that the City waived its right to assert immunity from suit by "accepting the benefits of the gifts, subject to the terms and conditions thereof."

## IV.    CONCLUSION

Plaintiffs have asserted a claim in this controversy sufficient to satisfy the jurisdictional requirements of Article III.   Further, sovereign immunity from suit does not bar Plaintiffs' suit against the City of Dallas.   We AFFIRM the district court's order insofar as it denied the City sovereign immunity from suit.

---

[37]    See Vaught v. Showa Denko K.K., 107 F.3d 1137, 1142 (5th Cir. 1997) (holding that certification "is appropriate only if it appears to the certifying court that there is no controlling precedent in the decisions of the Supreme Court of Texas") (internal quotation omitted).