The CITY OF DALLAS, Appellant,

v.

REATA CONSTRUCTION
CORPORATION,
Appellee.

No. 05–01–01780–CV.

Court of Appeals of Texas,
Dallas.

Aug. 14, 2002.

Rehearing Overruled Sept. 19, 2002.

Lee L. Cameron, Jr., Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Rebecca M. Alcantar, Dallas, for Appellee.

Before Justices KINKEADE, WRIGHT, and FITZGERALD.

## OPINION

Opinion By Justice FITZGERALD.

In this interlocutory appeal, the City of Dallas contends the trial judge erred in denying its plea to the jurisdiction. The City contends appellee's allegations do not fall within any waiver of governmental immunity. We agree. Accordingly, we reverse the trial court's order and dismiss appellee's claims against the City.

### BACKGROUND

In July 2000, the City granted a temporary license to Dynamic Cable Construction Company, Inc. ("Dynamic Cable") to install fiber optic cable conduit in downtown Dallas. Dynamic Cable subcontracted with appellee Reata Construction Corporation to do the necessary drilling work for the project. While appellee was drilling, it struck a thirty-inch water main buried below Young Street. As a result, a building owned by Southwest Properties Group, Inc. ("Southwest Properties") was flooded.

Southwest Properties sued both appellee and Dynamic Cable for property damage caused by the flooding. Appellee filed a third-party action against the City, urging the City's negligence caused the damages. Appellee's claims fell into two major categories: negligence and premises liability. The negligence claims charged the City failed properly (a) to map and plot the location of the water main when it was constructed and installed in 1948, and (b) to locate, identify, and mark the water

Charles S. Black, Jr., Assistant City Attorney, Dallas, for Appellant.

main in response to appellee's request in 2000. The City answered this action, asserting the defense of sovereign immunity. The City also filed a plea in intervention asserting claims against appellee and Dynamic Cable, alleging their negligence caused property damage to the City. Finally, residents of the flooded building intervened in the lawsuit, claiming property damage and mental anguish.

The City filed a plea to the jurisdiction concerning appellee's claims. The trial court denied the plea, and this appeal followed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2002) (allowing interlocutory appeal from order denying plea to jurisdiction).

## PLEA TO JURISDICTION

■ A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). The plea challenges the trial court's authority to determine the subject matter of a pleaded cause of action. *Tex. State Employees Union/CWA Local 6184 A.F.L.C.I.O. v. Tex. Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex.App.-Austin 2000, no pet.). The existence of subject-matter jurisdiction is a question of law; thus, we review de novo the trial court's ruling on a plea to the jurisdiction. *Id.*

■ The plaintiff has the burden to allege facts affirmatively demonstrating the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). A district court is required to construe liberally the allegations in favor of jurisdiction unless the face of the petition affirmatively demonstrates a lack of jurisdiction. *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989). Dismissing a cause of ac-

tion for lack of subject matter jurisdiction is proper only when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court. *TRST Corpus, Inc. v. Fin. Ctr., Inc.*, 9 S.W.3d 316, 320 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). In our review of the trial court's order dismissing a cause for want of jurisdiction, we must "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Tex. Air Control Bd.*, 852 S.W.2d at 446. Our task is to determine whether appellee pleaded a claim that appropriately invoked the trial court's jurisdiction.

## SOVEREIGN IMMUNITY

■ In Texas, a governmental unit is immune from tort liability unless the legislature has waived immunity. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998). There is no dispute that the City, as a municipality, is a governmental unit; rather, the question is whether the City's immunity has been waived so as to allow appellee to proceed with its claims against the City.

### Texas Tort Claims Act

The Texas Tort Claims Act (the "Act") identifies the categories of tort liability for which the legislature has and has not waived immunity. *See generally* TEX. CIV. PRAC. & REM.CODE ANN. ch. 101 (Vernon 1997). A governmental unit's sovereign immunity is waived to the extent chapter 101 allows, and a person may sue that governmental unit for damages to the extent allowed by that chapter. *Id.* § 101.025. The provisions of chapter 101 apply to tort claims based on acts or omissions that occurred on or after January 1, 1970. *Id.* § 101.061.

The Act speaks specifically to a municipality's liability, pronouncing that a municipality will be liable for its tortious conduct

to the extent provided by chapter 101 "for damages arising from its *governmental* functions." *Id.* § 101.0215(a) (Vernon Supp.2002) (emphasis added). Texas law has long made a distinction between a municipality's "governmental" functions (for which the municipality could not be liable) and its "proprietary" functions (for which the municipality could be liable). Before 1987, the judiciary categorized municipal functions as either governmental or proprietary. However, in that year:

> the Constitution was amended to authorize the Legislature to exercise this power, TEX. CONST. art. 11, § 13, and the Legislature did so by adding section 101.0215 to the Tort Claims Act. Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 3.02, 1987 Tex. Gen. Laws 37, 47–48. The Legislature defined almost all the functions of a municipality as governmental, thus shrouding them with immunity from liability. *Id.* In exchange for this added protection, the Legislature increased the liability limits on bodily injury and death liability for municipalities.... This legislation was part of a "tort reform" package enacted as Senate Bill 5.

*Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 83 (Tex.1997). The supreme court concluded the purpose of Senate Bill 5 was "to give municipalities greater certainty as to the extent of their liability." *Id.* at 84. To that end, the legislature reclassified a significant number of municipal functions that had been treated as proprietary at common law, making them governmental under the Act. *Id.* On the other hand, the legislature raised the limits of municipalities' liability. *Id.* (citing TEX. CIV. PRAC. & REM.CODE ANN. § 101.023(c)). "As a result, municipalities enjoyed immunity for more of their functions even though their maximum liability exposure when immunity was waived increased." *Id.*

We read the entries on the legislature's list of governmental functions with the section's purpose and its "tort reform" roots in mind. We agree with our sister court, for example, that a city's motives are irrelevant when the city is performing an act encompassed within the list of governmental functions; so long as the actions are so encompassed, "we have no discretion to declare the actions proprietary, regardless of the [c]ity's motives." *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 357 (Tex.App.-San Antonio 2000, no pet.); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(c) ("The proprietary functions of a municipality *do not include* those governmental activities listed under Subsection(a).") (emphasis added). Further, we recognize that when the legislature changed a classification from proprietary to governmental, it intended *all* actions taken by a city within that category to be reclassified. *See Mitchell v. City of Dallas*, 855 S.W.2d 741, 744 (Tex.App.-Dallas 1993), *aff'd*, 870 S.W.2d 21 (1994).

■ Among the thirty-plus governmental functions identified by the Legislature in 1987 as "governmental" are waterworks and water and sewer service. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(11), (32).[1] The Act does not define "water-

---

1. The Act states governmental functions are "enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." *Id.* At the outset, we note the City is charged by law with enforcing "ordinances necessary to protect health, life, and property and to preserve the good government, order, and security of the municipality and its inhabitants." TEX. LOC. GOV'T CODE ANN. § 54.004 (Vernon 1999). In the case of water delivery—which implicates at a minimum both health and property—the City provides security that ex-

works," so we apply its plain meaning: "the whole system of reservoirs, channels, mains, and pumping and purifying equipment by which a water supply is obtained and distributed to consumers." WEBSTER'S INTERNATIONAL DICTIONARY 2585 (3rd ed. 1981). The damages claimed by appellee against the City in this lawsuit are grounded in the City's marking of the location of its buried water main. We conclude the act of marking the location of the parts of the City's water delivery system is encompassed by the broad legislative concepts of waterworks and water services. We further conclude, based on the specific directive of the legislature in subsections 101.0215(a)(11) and (32), this conduct is governmental in nature. Accordingly, the City can only be liable for negligently marking its water lines if its conduct fits within one of the limited waivers of liability found in the Act.

Appellee's pleading identified two such statutory waivers as alternative grounds for liability if the City's actions were indeed governmental functions: sections 101.021 and 101.022.[2] Neither of these provisions supports appellee's arguments for waived immunity.

■ Section 101.021 waives immunity when the plaintiff urges a claim for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021. None of these subsections applies to the claims against the City in this case. First, appellee alleged no facts indicating a motor vehicle or motorized equipment was used by a city employee in a manner that could have caused the damage at issue in this lawsuit. *See id.* § 101.021(1). Moreover, none of the damages claimed in this lawsuit—whether by original plaintiff Southwest Properties, third-party plaintiff appellee, or intervenor residents of the flooded property—can be recovered under subsection (2) of this provision. Property damages are simply not recoverable at all under this subsection. *See id.* § 101.021(2). And the mental anguish damages claimed by the residents are not recoverable from the City. *See City of Tyler v. Likes,* 962 S.W.2d 489, 496 (Tex. 1997) ("Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only ... suits for wrongful death ... [or] actions by bystanders for a close family member's serious injury."). Appellee's claims do not fit within the statutory waivers of section 101.021 of the Act.

---

tends not only throughout the City but beyond its borders to all impacted by that delivery system. No doubt this is at least part of the reason the legislature specifically characterized water delivery related tasks as governmental.

**2.** Appellee also relies on section 101.0215 in terms of the classification of the functions as governmental or proprietary. However, we have already determined the City's conduct in this case implicated a governmental function.

■ Appellee next relies on chapter 101's waiver of immunity for premises liability claims. However, the prerequisite for any such waiver under this section is a claim involving a "premise defect." TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a) ("If a claim arises from a premise defect, . . . ."). In this case, the "premise" identified by appellee is the 1000 block of Young Street; the "defect" identified by appellee is the thirty-inch water main buried beneath the street. "Defect" is not defined in the statute so we give it its ordinary meaning of "imperfection, shortcoming, or want of something necessary for completion." *Cobb v. Tex. Dep't of Criminal Justice*, 965 S.W.2d 59, 62 (Tex.App.-Houston [1st Dist.] 1998, no pet.). Given this understanding, we conclude the buried water pipe was not a defect in the premise of downtown Dallas. The pipe itself was not imperfect, and it did not somehow render the downtown block imperfect; nor did the pipe have any shortcomings or need something for completion. On the contrary, before appellee's drilling accident, the pipe apparently worked well for its intended function. There are no allegations it caused injury to anyone occupying the downtown block. The facts of this case simply do not give rise to a claim against the City for premise defect.

We conclude appellee's claims against the City do not fit within any waiver of the City's sovereign immunity by the Act.

### Pre–1970 Common Law

■ Claims concerning acts or omissions that occurred before the Act became effective on January 1, 1970 are not covered by the Act. TEX. CIV. PRAC. & REM.CODE

ANN. § 101.061. Accordingly, causes of action based on acts of the City that occurred before 1970 will be governed by common law. *See Likes*, 962 S.W.2d at 501; *Lawrence v. City of Wichita Falls*, 906 S.W.2d 113, 116 (Tex.App.-Fort Worth 1995, writ denied). Appellee makes the following factual allegations concerning the City's pre–1970 actions:

36. The City of Dallas constructed and installed the 30–inch water main beneath Young Street prior to 1970, and knew of its true location at the time of its construction and installation in 1948.

37. The City of Dallas did not map, plot, or properly record the true location of the 30–inch water main beneath Young Street upon its construction and installation, or at any time prior to 1970.

To the extent the City negligently failed to map, plot, or properly record the location of the water main in 1948 (or at some other time before 1970), a claim based on that failure would be governed by common law.[3]

Before the legislature's classification of municipal functions in section 101.0215 of the Act, common law classified those functions as either governmental or proprietary. However, as we have noted, the legislature did not necessarily adopt the same classifications the common law employed. The City argued in its plea to the jurisdiction that the common law classified municipal functions related to waterworks or water and sewer services as governmental functions. We disagree. Actions related to waterworks and water delivery were broadly characterized as proprietary

---

**3.** Appellee alleges a number of purported breaches of duty by the City and includes language concerning "construction" and/or "installation" of the water main. However, in the absence of any factual allegations reflecting negligence in construction or installa-

tion of the water line, we will assume those references are merely to the time frame of the acts that are alleged. The gist of appellee's pre-1970 claim is clearly that the City failed to identify the location of the water main.

at common law. *See, e.g., Lawrence,* 906 S.W.2d at 117.

However, within that broad characterization, the common law differentiated between public discretionary activities and ministerial activities. The supreme court applied this distinction in *City of Tyler v. Likes.* That case involved flooding of the city's system of culverts, which had caused property damage and mental anguish to an affected homeowner. The homeowner complained of two separate "functions" of the city: (1) the city's design and plan of the culvert system and subsequent decisions not to improve that system; and (2) the city's construction, operation, and maintenance of the culvert system. *Likes,* 962 S.W.2d at 501. The court asserted "[g]overnmental immunity protects a city when it exercises discretionary powers of a public nature involving judicial or legislative functions." *Id.* (citing *City of Round Rock v. Smith,* 687 S.W.2d 300, 302 (Tex. 1985)). The court then concluded the city's design and planning of the culvert system was "quasi-judicial" in nature, and it was subject to immunity. *Id.* The court contrasted issues involving the construction and ongoing maintenance of the culvert system, which it called "ministerial functions," and for which the city could incur liability. *Id.*

We conclude the City's design and plan for its water delivery system were likewise quasi-judicial functions, subject to governmental immunity. We further conclude any decision to map or plot or record the location of the water delivery system was within the City's discretion and thus was also subject to immunity. Accordingly, appellee's claims based on pre–1970 conduct

of the City are barred, just as its claims based on post–1970 conduct are barred.

### *Waiver of Immunity by the City*

██ Finally, appellee also alleges the City has itself waived its immunity and consented to suit in this case. Appellee first relies on provisions in the local government code and the Dallas City Charter as express waivers of sovereign immunity. Appellee then relies on the City's intervention in this litigation as an "implicit waiver" of its immunity. The arguments are related, and both fail.

Appellee cites to section 51.075 of the local government code, which states "[t]he municipality may plead and be impleaded in any court," and to the City's charter, which states the City has the power "to sue and be sued" and "to implead and be impleaded in all courts." TEX. LOC. GOV'T CODE ANN. § 51.075 (Vernon 1999); DALLAS CITY CHARTER ch. II, § 1(2), (3) (Aug. 1999). Appellee argues these provisions serve as an express and complete waiver of the City's sovereign immunity. We disagree. Instead, we conclude these provisions simply speak to the City's capacity to sue and its capacity to be sued when immunity *has* been waived. *See Jackson v. City of Galveston,* 837 S.W.2d 868, 871 (Tex.App.-Houston [14 Dist.] 1992, writ denied) (rejecting waiver effect of same language in parallel provision governing general law municipalities).[4] These provisions do not expressly waive the City's sovereign immunity.

██ Appellee's second argument under this point centers around the City's petition in intervention in the underlying lawsuit. Appellee argues that when the City

4. We note the local government code provision at issue is titled *"Authority* Relating to Lawsuits," and that the section is found in the chapter titled "General *Powers* of Municipalities." Likewise, the relevant charter language is contained in the chapter and section titled *"Powers* of the City." (All emphasis added.) The provisions are concerned with what the City is empowered to do, not with waivers of the City's immunity.

asserted its own affirmative claims in this lawsuit for damage to its water main, it implicitly waived any right to object to a lack of subject-matter jurisdiction over appellee's separate tort claims. In effect, appellee argues, the City consented to suit—specifically to the claims presented by appellee—by pressing its own affirmative claim.

■ The general rule, of course, is that only the legislature can waive sovereign immunity. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex.2002) ("This Court has long recognized that 'it is the Legislature's sole province to waive or abrogate sovereign immunity.' ").[5] Moreover, when the legislature *has* waived sovereign immunity by statute, courts have consistently read the action narrowly, requiring *express waiver* by use of clear and unambiguous language. *See, e.g., Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980); *Univ. of Tex. at Austin v. Hinton*, 822 S.W.2d 197, 206 (Tex.App.-Austin 1991, no writ). Accordingly, the concept of sovereign immunity being waived by implication or by conduct—rather than by an express legislative action— has been generally rejected by Texas courts. *See, e.g., IT–Davy*, 74 S.W.3d at 856–57 (rejecting argument for waiver by conduct in contract case where State had fully accepted benefits of contract); *see also Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 251–52, 45 Tex. Sup. Ct. J. 623, 626–27 (2002) (rejecting waiver-by-conduct exception to sovereign immunity where county invoked contract's liquidated damages provision).

Appellee argues that when a governmental entity voluntarily submits its rights for judicial determination, (a) the governmental entity will be bound by that determination, and (b) a defendant may fully defend against the claim submitted by the governmental entity. *See, e.g., Anderson, Clayton & Co. v. State*, 122 Tex. 530, 537, 62 S.W.2d 107, 110 (1933); *State v. Martin*, 347 S.W.2d 809, 814 (Tex.Civ.App.-Austin 1961, writ ref'd n.r.e.). In *IT–Davy*, the supreme court addressed this issue as it reaffirmed the general rule:

> By stating that it is "the Legislature's sole province to waive or abrogate sovereign immunity," the majority opinion in *Federal Sign* [*v. Texas Southern University*, 951 S.W.2d 401 (1997) ] clearly reaffirmed a long line of cases standing for that general principle.... [T]he *only exception* we have found in which the State, by its own actions waives immunity, is that which applies when the State initiates a suit.

74 S.W.3d at 853 (quoting *Ho v. Univ. of Tex. at Arlington*, 984 S.W.2d 672, 682–83 (Tex.App.-Amarillo, 1998 pet.denied)) (emphasis in supreme court's quote). The supreme court has also declared the governmental entity bringing suit is subject to the same rules as other litigants, "except in so far as such rules may be modified in favor of the state by statute or may be inapplicable or unenforceable because of exemptions inherent in sovereignty." *Anderson, Clayton & Co.*, 122 Tex. at 538, 62 S.W.2d at 110. Those "exemptions inherent in sovereignty" are critical. Although the party sued by a governmental entity may defend fully against the government's claim, sovereign immunity still forecloses suit against that governmental entity.

---

5. In this context, we are speaking solely to the concept of waiver of immunity from suit, which concerns a trial court's subject-matter jurisdiction. *See Kinnear v. Tex. Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex.

2000). Immunity from liability is in the nature of an affirmative defense, and like other affirmative defenses it can be waived if not pleaded. *Id.*

The doctrine of sovereign immunity relates to the City's role as defendant, not as claimant. As we have already seen, the City has the capacity to sue. However, the principles of capacity and immunity are separate and distinct, and the exercise of one does not operate to waive or void the other. By intervening in this action, the City has asserted its right to sue, but it has not waived its right to be immune from suit in accordance with the law. *See, e.g., Wallace v. City of Midland,* 836 S.W.2d 641, 643 (Tex.App.-El Paso, writ denied) (rejecting argument that governmental entity waives its sovereign immunity by requesting affirmative relief in court); *see also Fesal v. Hutchinson County,* 443 S.W.2d 937, 938–39 (Tex.Civ. App.-Amarillo 1969, writ ref'd n.r.e.) (county hospital that initiated suit on sworn account for hospital services did not waive immunity from tort liability in patient's cross-claim for personal injuries).

### CONCLUSION

We find no waiver of the City's sovereign immunity in this case. Accordingly, we resolve the City's single issue in its favor. We reverse the trial court's order denying the City's plea to the jurisdiction, and we dismiss appellee's claims against the City.