IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 
02-1031
════════════
 
Reata 
Construction Corp., Petitioner
 
v.
 
City of 
Dallas, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Fifth District of Texas
════════════════════════════════════════════════════
 
 
PER CURIAM
 
The 
issue in this case is whether a city waives its governmental immunity from suit 
by intervening in a lawsuit to assert claims for affirmative relief.  The court of appeals held that it does 
not.  83 S.W.3d 
392.  Because we disagree, we 
reverse the court of appeals= 
judgment and remand this case to the trial court.
The 
City of Dallas issued Dynamic Cable Construction Company, Inc. (ADynamic@) 
a temporary license to install fiber optic cable in downtown Dallas.  Dynamic subcontracted with Reata 
Construction Company (AReata@) 
to do the drilling for the conduit.  
On September 4, 2000, Reata inadvertently drilled into a thirty-inch 
water main, flooding a nearby residential building owned by Southwest Properties 
Group, Inc. (ASouthwest@).  Soon after, Southwest sued Dynamic and 
Reata for negligence.  The 
building=s 
tenants intervened in the suit seeking damages.
On 
January 12, 2001, Reata filed a third-party claim against the City of Dallas 
alleging that the plaintiffs= 
damages were caused by the City=s 
misidentification of the water main=s 
location when it was installed in 1948 and again in response to Reata=s 
request in 2000.  With its answer to 
Reata=s 
petition, the City filed special exceptions asserting that Reata=s 
claims were not within the Texas Tort Claims Act=s 
waiver of immunity.  The City also 
intervened asserting claims against Dynamic.  Eight months later, on September 11, 
2001, the City filed a second amended plea in intervention asserting a claim of 
negligence against Reata related to the flooding, and seeking actual damages, 
pre- and post-judgment interest, costs, and Aany 
other relief at law and equity to which it may be entitled.@
The 
next day, the City filed a plea to the jurisdiction asserting governmental 
immunity from suit with regard to Reata=s 
claims against it.  Reata filed a 
response to the plea, arguing that: (1) governmental immunity did not apply 
because the City subjected itself to jurisdiction by intervening in the lawsuit 
and seeking affirmative relief; (2) the Dallas City charter and section 51.057 
of the Texas Local Government Code contain express waivers of sovereign immunity 
because they provide that the City may Asue 
or be sued@ 
and Aplead 
and be impleaded@[1]; 
(3) under the common law, the City could not assert governmental immunity for 
its actions predating 1970 because water services were considered a proprietary 
function; and (4) even if the Texas Tort Claims Act applied, Reata=s 
claim fell within the Act=s 
waiver of sovereign immunity.  
The 
trial court denied the City=s 
plea to the jurisdiction, and the City took an interlocutory appeal.  See Tex. Civ. Prac. & Rem. Code ' 
51.014 (a)(8).  
Rejecting each of Reata=s 
asserted bases for a waiver of governmental immunity, 
the court of appeals reversed and dismissed Reata=s 
claims against the City.  83 S.W.3d 392.  
The court of appeals held that even though the City intervened in the 
suit against Reata, the City did not waive any right to object to a lack of 
subject matter jurisdiction.  Id. at 398-99.  
By intervening, the court of appeals reasoned, the City asserted its 
right to sue but did not waive its governmental immunity from suit.  Id. at 
400.  Because we agree with 
Reata that the City waived its immunity from suit by intervening and asserting 
claims for damages against Reata, we reverse.
The 
court of appeals= 
judgment provided: AIn 
accordance with this Court=s 
opinion of this date, the judgment of the trial court is REVERSED and 
[Reata=s] 
claims against the City of Dallas are DISMISSED.@  The court of appeals= 
judgment constitutes a final judgment from which an appeal can be taken to this 
Court.
To 
the extent the City enjoyed governmental immunity from suit with regard to 
Reata=s 
claims, the City waived that immunity by intervening in the lawsuit and 
asserting claims for damages against Reata.  Therefore, the trial court had subject 
matter jurisdiction over Reata=s 
claims against the City, and the court of appeals erred in dismissing them.  Because this appeal concerns a plea to 
the jurisdiction, our review is necessarily limited to determining whether the 
City waived its immunity from suit, and we do not decide whether the City waived 
its immunity from liability.
            
The court of appeals recognized that our decision in Anderson, 
Clayton & Co. v. State ex rel. Allred, 62 S.W.2d 107, 110 
(Tex.  1939), states: A[W]here 
a state voluntarily files a suit and submits its rights for judicial 
determination, it will be bound thereby, and the defense will be entitled to 
plead and prove all matters properly defensive.  This includes the right to make any 
defense by answer or cross-complaint germane to the matter in controversy.@  But the court of appeals relied on other 
language in that decision providing that the State, having invoked the 
jurisdiction of the district court, was Asubject 
to the same rules as other litigants, except in so far as such rules may be 
modified in favor of the state by statute or may be inapplicable or 
unenforceable because of exemptions inherent in sovereignty.@  Id. (emphasis added).  Relying on this language, the court of 
appeals concluded that, when a governmental entity intervenes in a lawsuit, 
Asovereign 
immunity still forecloses suit against that governmental entity.@  83 S.W.3d at 
399.
Although 
there may have been some ambiguity after Anderson regarding whether 
immunity from suit is waived by the State=s 
invoking a court=s 
jurisdiction, this ambiguity was resolved by our decision in Kinnear v. Tex. 
Comm=n 
on Human Rights ex rel. Hale, 14 S.W.3d 299 (Tex. 2000).  In Kinnear, the Texas Commission 
on Human Rights filed suit against Kinnear, alleging that he had violated the 
Texas Fair Housing Act.  Kinnear 
counterclaimed for attorney=s 
fees as provided by the Act, and when he prevailed the trial court awarded 
them.  In response to the 
Commission=s 
assertion of immunity, we held that A[b]ecause 
the Commission initiated [the] proceeding under the Texas Fair Housing Act, and 
Kinnear claimed attorney fees as a consequence of that suit, the jurisdictional 
question in this case was answered when the Commission filed suit . . . .@  Id. at 
300.  Thus, under 
Kinnear, when a governmental entity files suit against a party, that 
entity waives, at a minimum, immunity from suit for counterclaims filed as a 
consequence of the suit.  
Id.
Moreover, 
by filing a suit for damages, a governmental entity waives immunity from suit 
for any claim that is Aincident 
to, connected with, arises out of, or is germane to the suit or controversy 
brought by the State.@  State v. Martin, 347 S.W.2d 809, 
814 (Tex. Civ. App.CAustin 
1961, writ ref=d 
n.r.e.); see also Tex. Natural Res. Conservation Comm=n 
v. IT-Davy, 74 S.W.3d 849, 861 (Tex. 2002) (Hecht, J., concurring) (citing 
Kinnear and Anderson for the proposition that Ait 
has long been held that the State can waive immunity by filing suit@); 
State v. Humble Oil & Ref. Co., 169 S.W.2d 707, 710 (Tex. 1943) 
(rejecting a waiver of immunity from suit because the claim was not Adependent 
upon@ 
or Aconnected 
with@ 
and did not grow out of the subject matter of the suit brought by the 
State).  Therefore, if the City had 
filed an original petition against Reata for damages, the filing of the suit 
would have waived the City=s 
immunity from suit for Reata=s 
claims against the City related to the flooding.  See Kinnear, 14 
S.W.3d at 300; Anderson, 62 S.W.2d at 110.
Any 
Aperson 
or entity has the right to intervene if the intervenor could have brought the 
same action, or any part thereof, in his own name, or, if the action had been 
brought against him, he would be able to defeat recovery, or some part 
thereof.@  Guaranty Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex. 1990); Tex. R. Civ. P. 60.  To be voluntarily joined as a plaintiff, 
a party must assert claims for relief that arise Aout 
of the same transaction, occurrence, or series of transactions or occurrences . . . .@  Tex. R. Civ. P. 40.  The City, therefore, had the option to 
file its own suit, or in the interest of judicial economy, intervene in 
Southwest=s 
suit.  For purposes of waiver of 
governmental immunity from suit, we see no reason to differentiate between a 
governmental entity as a plaintiff and as a plaintiff-intervenor.  When the City filed its plea in 
intervention against Reata, it subjected itself to the jurisdiction of the trial 
court and waived its governmental immunity from suit with regard to Reata=s 
claims Agermane 
to the matter in controversy.@  Martin, 347 
S.W.2d at 814.  Accordingly, 
pursuant to Texas Rule of Appellate Procedure 59.1 and without hearing oral 
argument, we reverse the court of appeals= 
judgment and remand the case to the trial court for further proceedings.  Tex. R. App. P. 59.1.
 
OPINION 
DELIVERED: April 2, 2004
 




[1] The Dallas City charter provides that the City has the 
power Ato sue and be sued@ and Ato implead and be impleaded in all courts.@  Dallas City Charter ch. II, 
' 1(2), (3) (Aug. 1999).  Section 51.075 provides that 
A[t]he municipality may plead 
and be impleaded in any court.@  Tex. Loc. Gov=t 
Code ' 
51.075.