Opinion issued September 10, 2004












In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-03-00557-CV
____________

THE STATE OF TEXAS, Appellant

V.

THE CITY OF GALVESTON, Appellee
 

 
 
On Appeal from the 212th District Court
Galveston, County, Texas
Trial Court Cause No. 03CV0018
 

 
 
O P I N I O N
          Appellant, the State of Texas, appeals from a final order granting the plea to
the jurisdiction of appellee, the City of Galveston (“the City”), and dismissing the
cause. We decide whether a municipality enjoys governmental immunity from the
State’s lawsuit for negligence and actual damages. Answering the question in the
negative, we reverse the order and remand the cause.
Standard of Review
          In deciding a plea to the jurisdiction, a trial court considers the plaintiff’s
pleadings and any evidence pertinent to the jurisdictional inquiry. See Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554-55 (Tex. 2000); see also Tex. Natural Res. 
Conservation Comm’n v. White, 46 S.W.3d 864, 867-68 (Tex. 2001). We review de
novo a trial court’s ruling on a jurisdictional plea, construing the pleadings in the
plaintiff’s favor and looking to the pleader’s intent. See Tex. Natural Res.
Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002); Tex. Ass’n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); Junemann v. Harris
County, 84 S.W.3d 689, 693 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). 
Background
          The parties submitted no evidence; thus, our facts come from the State’s
petition, viewed in the appropriate light. See Tex. Ass’n of Bus., 852 S.W.2d at 446. 
The City and Galveston County asked the Texas Department of Transportation
(“TxDOT”) to build a roadway in Galveston County. As part of the agreement, the
City “provided for the adjustment of all utilities, including a municipal water line
which ran underneath a ramp approach and bridge deck of the roadway.” The
finished roadway was later designated as part of the State highway system. The
City’s waterline underlying the highway ruptured, causing erosion that threatened to
collapse the highway and its bridge structures. The State spent its funds to repair the
damage. 
          The State, on behalf of TxDOT, sued the City for negligence in the installation,
maintenance, and upkeep of the water line. The State sought actual damages of
$180,872.53, pre-judgment interest, attorney’s fees, and costs. The City asserted
governmental immunity from suit and filed a jurisdictional plea.


 Specifically, the
City argued that it enjoyed governmental immunity from suit and that the State had
not pleaded a cause of action for which the Texas Tort Claims Act


 (“TTCA”) waived
that immunity. The State responded on the ground that the City did not enjoy
governmental immunity from the State’s claims against it because the City’s
immunity derives wholly from that of the State. After a non-evidentiary hearing, the
trial court granted the City’s jurisdictional plea and dismissed the cause.
 
The City Does Not Enjoy Governmental Immunity from
the State’s Suit Asserting Negligence Claims for Actual Damages
 
          Neither party disputes that the City performed a governmental function in
committing the acts alleged by the State to have been negligent. See Tex. Civ. Prac.
& Rem. Code Ann. § 101.0215(11), (32) (Vernon 1997 & Supp. 2004-2005)
(defining municipality’s governmental functions as including “waterworks” and
“water and sewer service”); see also City of Dallas v. Reata Constr. Corp., 83 S.W.3d
392, 396 (Tex. App.—Dallas 2002) (holding that section 101.0215(11) and (32)
encompass the act of marking underground water delivery system), rev’d on other
grounds, No. 02-1031, 2004 WL 726906 (Tex. Apr. 2, 2004). A city’s performance
of a governmental function entitles it to immunity from suit brought by private parties
for tort damages arising out of that function’s performance, absent a waiver of that
immunity from suit in, for example, the TTCA. See, e.g., Tex. Civ. Prac. & Rem.
Code Ann. §§ 101.021, 101.0215(a), 101.025 (Vernon 1997 & Supp. 2004-2005).
          In its sole issue, the State maintains that the trial court erred in granting the
City’s jurisdictional plea because any immunity from suit that the City possesses, as
a political subdivision of the State, is an extension of the State’s own immunity from
suit and does not shield the city against the claims of the State itself. As the State
explains, the City’s immunity from suit “does not arise from any inherent sovereignty
of [its] own, but instead derives from [its] status as [a] political subdivisio[n] of the
State”; accordingly, the City impermissibly asserts “the State’s immunity against the
State itself.” From this premise, the State concludes that no waiver of immunity from
suit from within the TTCA is required for the State to sue the City for the latter’s
negligence.
A.      Municipalities Derive Their Immunity From That of the State, as
Sovereign
 
          We look to common-law principles to determine whether the City enjoys
governmental immunity from suit in this case. See Tex. A&M Univ.-Kingsville v.
Lawson, 87 S.W.3d 518, 520 (Tex. 2002) (“In Texas, the bar of sovereign immunity
is a creature of the common law and not of any legislative enactment.”). 
          Municipalities are political subdivisions of the State. See Lake Charles Harbor
& Terminal Dist. v. Bd. of Trs. of Galveston Wharves, 62 S.W.3d 237, 246 (Tex.
App.—Houston [14th Dist.] 2001, pet. denied); cf. Tex. Civ. Prac. & Rem. Code
Ann. § 101.001(3)(B) (Vernon Supp. 2004-2005) (“‘Governmental unit’ means: . .
. a political subdivision of this state, including any city . . . .”). Since 1884,
municipalities have enjoyed immunity when performing governmental functions, but
not when performing proprietary functions. See, e.g., City of Galveston v.
Posnainsky, 62 Tex. 118, 132-33 (1884) (first distinguishing between municipality’s
governmental and proprietary functions for purposes of immunity from tort claims). 
In reaching this holding, the Posnainsky court reasoned that
in so far as municipal corporations . . . exercise powers conferred on
them for purposes essentially public—purposes pertaining to the
administration of general laws made to enforce the general policy of the
state—they should be deemed agencies of the state, and not subject to
be sued for any act or omission occurring while in the exercise of such
power, unless, by statute, the action be given; that, in reference to such
matters, they should stand as does sovereignty, whose agents they are,
subject to be sued only when the state, by statute, declares they may be. 
 
Id. at 127 (emphasis added). The supreme court’s reasoning shows that
municipalities enjoy immunity from suit for governmental activity, not due to any
inherent sovereignty, but, rather, because the State cloaks them with the State’s
sovereign immunity from suit while they carry out the State’s public purposes. See
id. at 126-27. Thus, any immunity from suit that a municipality enjoys derives solely
from the State’s immunity—the former receives immunity from suit only when
carrying out governmental activities implicitly delegated to it to carry out in the
latter’s stead. See id. at 128; cf. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)
(defining “governmental functions” as “those functions that are enjoined on a
municipality by law and are given it by the state as part of the state’s sovereignty, to
be exercised by the municipality in the interest of the general public . . . .”). Texas
courts have repeatedly noted or applied variations of the “derived immunity”
reasoning that the Posnainsky court first recognized.


 
 
          Our sister court in Austin, based on a derived immunity reasoning, recently
resolved an issue similar to the one before us in favor of the State. See Tex. Workers’
Comp. Comm’n v. City of Eagle Pass/Tex. Mun. League Workers’ Comp. Joint Ins.
Fund, 14 S.W.3d 801, 806 (Tex. App.—Austin 2000, pet. denied). In Eagle Pass, the
Texas Workers’ Compensation Commission (“TWCC”), a statewide agency,



assessed administrative penalties against the city and its transportation authority
(“Capital Metro”) for their having made late benefits payments in violation of the
Labor Code. See id. at 803. The city and Capital Metro were undisputedly “political
subdivisions.” See id. at 802-03, 805-06. The city and Capital Metro admitted
violations, but claimed immunity from suit for administrative penalties under the
sovereign-immunity doctrine. See id. at 803. The Austin Court of Appeals rejected
the assertion, holding instead that a defense of immunity from suit was “inapplicable”
to the State’s enforcement action:
[M]unicipalities are created as political subdivisions of the State and
“represent no sovereignty distinct from the state and possess only such
powers and privileges as have been expressly or impliedly conferred
upon them.” A municipality’s sovereignty is dependent upon that of the
State. . . . Because political subdivisions of the State do not possess such
independent sovereignty, they have no immunity as against the State.
 
Under the common law doctrine of immunity, municipalities and other
political subdivisions of the State possess limited immunity from actions
brought by private third parties. This immunity results from agency
principles and the fact that municipalities and political subdivisions are
agents of the State. A political subdivision’s immunity is a privilege
afforded it based on its existence as a subdivision of the State, and “[a]
municipality, as a political subdivision of the state, is not liable for the
acts or conduct of its officers or employees . . . .” Thus, a political
subdivision’s derivative immunity acts as a shield against actions
brought by private parties but not as a shield against the State, from
which the subdivision derives its immunity.
 
Id. at 803-04 (citations omitted; emphasis in original).
          Cases from other jurisdictions support the Eagle Pass court’s holding and
apply similar reasoning to tort suits brought by the State. See Bd. of Educ. of Prince
George’s County v. Mayor & Common Council of the Town of Riverdale, 578 A.2d
207, 210 (Md. 1990) (in tort suit brought by state, after noting that plaintiff was “state
agency,” holding that “the immunity of . . . municipalities is derived from the State’s
sovereign immunity. . . . [T]he nature of governmental immunity for . . .
municipalities prevents them from asserting the defense of immunity when sued by
the State or a State agency.”); Ohio v. City of Bowling Green, 313 N.E.2d 409, 412
& n.2 (Ohio 1974) (“[A municipality’s] immunity is derivative; it arises because the
municipality, when performing a governmental function, is acting as an arm or agent
of the state. . . . [W]here the injured party is the state itself, . . . the situation resembles
a suit by a principal against an agent whose negligence has resulted in damage to the
principal. In such a situation it would be illogical to allow the municipality to assert
its general tort immunity against the very source of that immunity.”).



 
          We agree with the Eagle Pass court’s reasoning and its conclusion. 
Accordingly, we hold that governmental immunity does not shield a municipality
from the State’s suit asserting tort claims for actual damages because any immunity
that a municipality enjoys derives from the State’s own immunity.
          The City argues that we should distinguish this case from Eagle Pass because
(1) the Labor Code expressly subjected the Eagle Pass defendants to administrative
penalties, thus “accomplishing a clear and unambiguous waiver of whatever
[governmental] immunity [did] exist,” and (2) Eagle Pass involved administrative
penalties, rather than tort damages.
          As for the first distinction, the City concedes that the Eagle Pass court did not
base its pertinent holding on the fact that the Code provided for administrative
penalties against political subdivisions. See Eagle Pass, 14 S.W.3d at 804. Indeed,
the Eagle Pass court expressly concluded that governmental immunity simply did not
apply to TWCC’s imposition of penalties, and, thus, an analysis of statutory waiver
was unnecessary. See id. at 804. If immunity from suit does not apply, then no
waiver of immunity from suit is necessary: one need not waive that which does not
exist.


 Cf. Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 404 (Tex. 1997) (noting that private litigant does not need legislative permission to sue State for state official’s
violations of state law because such violations are not acts of State, so that suit “is not
a suit against the State that sovereign immunity bars”; thus concluding that “[a] party
can maintain a suit to determine its rights without legislative permission”),
superseded by statute on other grounds as stated in Gen. Servs. Comm’n v. Little-Tex
Insulation Co., 39 S.W.3d 591, 593 (Tex. 2001).
          Like the City, Justice Keyes’s dissenting opinion argues that the Eagle Pass
court did not need to resolve its case on the basis of the political subdivisions’
derivative immunity, but could instead have resolved the case on the ground that the
Labor Code acted as a legislative waiver of immunity from suit. See Eagle Pass, 14
S.W.3d at 805 (in rejecting argument that, even if governmental immunity did not
apply, Labor Code still did not empower Commission to assess penalties against
political subdivisions, holding that the city and Capital Metro were “indisputedly
‘persons’ against which the Commission may assess an administrative penalty”). The
Eagle Pass court could have done so, but expressly did not. It did not do so evidently
because it—as do we—recognized that immunity from suit did not exist in the first
place. We thus reject Justice Keyes’s (and Justice Jennings’s) assertion that our
holding creates an exception to immunity from suit: we do not create an exception,
but instead recognize that no immunity from suit exists when the sovereign seeks
judicial redress. We similarly reject Justice Keyes’s argument that our holding “goes
well beyond” that of the Eagle Pass court for the reason that “there is no statutory
authority to support the majority’s decision that Galveston lacks immunity to
TxDOT’s tort claims, unlike the statutory authority provided by the Labor Code in
Eagle Pass.” The Eagle Pass court expressly declined to confine its pertinent
holding to an interpretation of the Labor Code’s authorization for the assessment of
penalties. See id. at 803-04. 
          As for the second distinction, we recognize that Eagle Pass involved the
State’s assessment of administrative penalties, i.e., the State’s regulatory authority,
rather than a tort suit brought by the State. See Eagle Pass, 14 S.W.3d at 803. We
also recognize that tort claims and administrative penalties differ in important ways. 
Nonetheless, the Eagle Pass court’s reasoning encompasses the State’s tort claims. 
The fact that administrative penalties are fixed by statute, as the City notes, rather
than unliquidated, as tort damages generally are, does not change the logic upon
which Eagle Pass or derived immunity law is based. If a municipality does not enjoy
immunity from suit brought by the sovereign from whom its immunity derives, then
it should not matter whether the sovereign is seeking actual damages in tort or
administrative penalties. We also reject Justice Jennings’s argument that Eagle Pass
does not support our holding because its holding is allegedly limited to the context
of the State’s regulatory authority. To the contrary, the Eagle Pass court’s holding
is expressly broader than that, and its rationale and conclusion logically apply in any
context in which the State sues its political subdivision. See id. Accordingly, we
reject the City’s arguments distinguishing Eagle Pass.



B.      The Policy Behind Governmental Immunity Supports the Conclusion that
the City Possesses No Immunity From the State’s Claim
 
          The City further argues that holding that municipalities do not enjoy immunity
from the State’s tort claims conflicts with the policy reasons behind governmental
immunity. Sovereign immunity protects the public treasury by preventing the shifting
of tax resources away from their intended purposes and towards defending lawsuits
and paying judgments. See Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 695
(Tex. 2003); IT-Davy, 74 S.W.3d at 854. We acknowledge that allowing the State to
recover damages from a municipality potentially shifts costs from the State to the
local level, depleting local coffers of funds that have already been budgeted for local
matters. This shifting, however, also replenishes other public funds—those allocated
in the state budget for public projects of the State and its agencies—that are lost due
to the municipality’s alleged fault. For purposes of immunity, therefore, tort suits by
the State differ in this significant respect from tort suits by individuals.
C.      The State Has Brought this Suit in its Sovereign Capacity, and its Doing
So Does Not Violate the Separation-of-Powers Doctrine
 
          The City alternatively argues that, even if it does not enjoy immunity from suit
from the sovereign’s tort claims, the City enjoys immunity from suit here because the
State did not bring this suit in its capacity as sovereign. The City reasons that (1) the
Judicial Department defers to the Legislature to waive sovereign immunity,


 though
sovereign immunity is a centuries-old common-law creature of the Judiciary;


 (2) the
Attorney General is a member of the Executive Department,


 not the Legislative
Department; and (3) by making a claim against a municipality on behalf of a
department of the State, the Attorney General impermissibly is attempting to “share
the Legislature’s power to set the appropriate boundaries on suits for damages paid
by the people’s money out of state or local treasuries.” Similarly, starting from the
premise that the people, rather than any single state agency, constitute the sovereign,
the City further argues that the Attorney General has not appeared on behalf of the
“state as state,” but instead “has appeared merely on behalf of TxDOT—a constituent
state agency,” which the Legislature has “never empowered to exempt any city
functions from the general rule of governmental immunity.”
          The City is thus arguing that TxDOT has not sued in the State’s sovereign
capacity and, alternatively, that if TxDOT is suing in the State’s sovereign capacity,
it is violating the Constitution’s separation-of-powers provision by doing so. See
Tex. Const. art. II, § 1. We address both arguments.
          We first treat the City’s argument that the Attorney General does not represent
the State as sovereign in this suit, but is instead representing only “TxDOT—a
constituent state agency.” We agree that the people do constitute the sovereign (i.e.,
“the State”),


 but it is indisputable that the people act as sovereign through the
branches, agencies, and departments of the state government that they have adopted. 
See, e.g., Tex. Const. art. I, § 2, art. II, § 1, art. III, § 1, art. IV, § 1, art. V, § 1. The
department of state government through which the sovereign people plan, construct,
and maintain their state highways (the property alleged to have been damaged here)
is TxDOT. See Tex. Transp. Code Ann. §§ 201.103(a), 201.601, 201.202(a)(2)
(Vernon 1999 & Supp. 2004-2005). TxDOT is considered “the State” because,
among other things, it has statewide jurisdiction and the governor appoints certain of
its governing officials.


 Accordingly, the Attorney General does not appear “merely
on behalf of TxDOT” in this suit, but instead represents the interests of the sovereign
State of Texas.



          This is, of course, the Attorney General’s job. His primary duties are “to render
legal advice in opinions to various political agencies and to represent the State in
civil litigation.” Perry v. Del Rio, 67 S.W.3d 85, 92 (Tex. 2001) (emphasis added);
see Tex. Const. art. IV, § 22 (“The Attorney General shall represent the State in all
suits and pleas in the Supreme Court of the State in which the State may be a party
. . . and give legal advice in writing to the Governor and other executive officers . . .
and perform such other duties as may be required by law.”); Tex. Gov’t Code Ann.
§ 402.021 (Vernon 1998) (“The attorney general shall prosecute and defend all
actions in which the state is interested before the supreme court and courts of
appeals.”); cf. Tex. Const. art. V, § 21 (as part of the Judicial Department, “[t]he
County Attorneys shall represent the State in all cases in the District and inferior
courts . . . .”). The Attorney General has thus been described as “the State’s chief
legal officer.” Del Rio, 67 S.W.3d at 92. In appearing in this litigation, therefore, the
Attorney General is fulfilling his duty to represent the State in civil suits. Contrary
to the City’s argument, the Attorney General is not usurping legislative power by
“waiving” immunity from suit, but, rather, represents the position of the State, as its
advocate, that no immunity exists in the first instance for this type of claim. As the
State’s chief legal officer, it is within his ambit to seek legal redress in the courts on
behalf of the State.
          As for the City’s contention that our holding allows the Attorney General (or
TxDOT) to violate the separation-of-powers doctrine


—a charge that the dissenting
opinion also asserts—we disagree. The City contends that allowing the Attorney
General, a member of the Executive Department, to sue effectively “waives”
immunity from suit, a power traditionally placed with the Legislature in our common-law precedent.
          If the Attorney General sought a judicial waiver of the City’s immunity on the
State’s behalf, then he would have to defer to the Legislature to accede to such a
waiver. But the State and the Attorney General seek no such thing. Rather, they
contend that a political subdivision has no judicial immunity from the State’s suit to
begin with because the State is the supreme sovereign. Thus, we decide in this case
whether the City enjoys immunity from suit in the first instance. If the City does not
enjoy immunity from this type of suit at all, then there is no immunity from suit to
waive. If there is no immunity from suit to waive, then the Attorney General may
represent the State in this claim for redress.


 See Tex. Const. art. IV, § 22; Tex.
Gov’t Code Ann. § 402.021; Del Rio, 67 S.W.3d at 92. We will not judicially limit
the State’s power to seek redress absent legislative action or constitutional
amendment limiting the State’s power to do so.
 
D.      Home-Rule Status Does Not Make a Municipality Its Own Sovereign for
Purposes of Immunity
 
          The City argues that the home-rule amendment allows the City to enjoy
“immunity from suit and liability to the same extent as the State itself.” See Tex.
Const. art. XI, § 5; see also City of Galveston v. Giles, 902 S.W.2d 167, 170 (Tex.
App.—Houston [1st Dist.] 1995, no writ) (noting City of Galveston’s home-rule
status).
          The State of Texas added the home-rule amendment to the Texas Constitution
in 1912. See 22 David B. Brooks, Texas Practice: Municipal Law & Practice
§ 1.17 (2nd ed. 1999) [hereinafter “Brooks”]; Tex. Const. art. XI, § 5; see also Act
of March 31, 1913, 33rd Leg., R.S., ch. 147, § 4, 1913 Tex. Gen. Laws 307, 310-16
(now appearing at Tex. Loc. Gov’t Code Ann. §§ 51.071-.079 (Vernon 1999 &
Supp. 2004-2005)) (enabling legislation). The purpose of the home-rule amendment
is “to bestow upon the cities coming under the . . . Amendment ‘full power of local-self government.’ . . . It was the intention . . . to give to cities the right to determine
for themselves what kind of charter they should live under.” City of Houston v. City
of Magnolia Park, 276 S.W. 685, 689 (Tex. 1925) (citation omitted); accord City of
Houston v. State ex rel. City of W. Univ. Place, 176 S.W.2d 928, 929 (Tex. 1943)
(quoting Magnolia Park). The amendment was intended “to obviate the necessity of
[home-rule] cities coming to the Legislature whenever any change was desired in
their charters, and in order to facilitate selfgovernment . . . .” Anderson v. Brandon,
47 S.W.2d 261, 262 (Tex. 1932); see City of Wichita Falls v. Cont’l Oil Co., 1
S.W.2d 596, 597 (Tex. 1928) (noting that “primary purpose” of amendment was
“convenience and directness of this method of city government”). Accordingly, the
amendment eliminated the longstanding practice of having the Legislature grant and
amend special charters and instead allowed qualifying municipalities to adopt and to
amend their charters without legislative approval, as long as the charter did not
infringe upon the state Constitution or laws passed by the Legislature. See Tex.
Const. art. XI, § 5; Tex. Loc. Gov’t Code Ann. § 51.072 (Vernon 1999); City of
San Antonio v. City of Boerne, 111 S.W.3d 22, 26 & 26 n.5 (Tex. 2003); Anderson,
47 S.W.2d at 262; Brooks § 1.17.
          In carrying out these purposes, the home-rule amendment and its enabling
statutes authorized municipalities “to do anything [that] the legislature could
theretofore have authorized them to do.” Forwood v. City of Taylor, 214 S.W.2d 282,
286 (Tex. 1948) (describing home-rule municipality as “a delegate of legislative
power”); City of San Antonio, 111 S.W.3d at 26 n.5. In this sense, home-rule cities
derive their powers from the Texas Constitution. See Proctor v. Andrews, 972
S.W.2d 729, 733 (Tex. 1998); Tex. River Barges v. City of San Antonio, 21 S.W.3d
347, 352 (Tex. App.—San Antonio 2000, pet. denied). Municipalities adopting a
home-rule charter thus have “the full power of self government” and look to the
Legislature only for limitations on their power. Perry v. Grenias, 95 S.W.3d 683, 694
(Tex. App.—Houston [1st Dist.] 2002, pet. denied); accord Giles, 902 S.W.2d at 170
(describing home-rule city’s powers as “plenary”); see Tex. Loc. Gov’t Code Ann.
§ 51.072(a) (“The [home-rule] municipality has full power of local self-government.”).
          Although the home-rule amendment grants municipalities powers of self-determination, it does not—as the City argues—transform municipalities into
independent sovereigns for purposes of immunity from suit. Indeed, the opposite is
true. Like all municipalities, home-rule municipalities “‘represent no sovereignty
distinct from the state and possess only such powers and privileges as have been
expressly or impliedly conferred upon them.’” Lake Charles Harbor & Terminal
Dist., 62 S.W.3d at 246 (quoting this holding of Payne v. Massey, 196 S.W.2d 493,
495 (Tex. 1946), despite fact that City of Galveston is home-rule city); Eagle Pass,
14 S.W.3d at 803 (holding same, despite fact that City of Eagle Pass is home-rule
city).


 The home-rule amendment’s delegation of legislative authority did nothing
to change the nature of state sovereignty. Accordingly, home-rule municipalities’
immunity from suit for governmental functions does not arise from their home-rule
status, but instead devolves from the State’s sovereign immunity. See Eagle Pass, 14
S.W.3d at 803-04. Simply put, the State of Texas, in contrast to the United States of
America, is not a federation of sovereign cities. Instead, the State of Texas is itself
the sole, superior sovereign. See Eagle Pass, 14 S.W.3d at 803 (“While it is well
established that sovereign immunity protects the federal government from state suits
and vice versa, this immunity stems from the basic precept of federalism that the
federal and several state governments each possess independent sovereignty. 
Because political subdivisions of the State do not possess such independent
sovereignty, they have no immunity as against the State.”).
          If the City were correct that a home-rule municipality’s immunity is
coextensive with that of the State, the proprietary-governmental distinction that
consistently has been recognized for 120 years would disappear, so that a home-rule
municipality would enjoy immunity from tort suits arising from any activity that it
conducted—just as the State does


—not just for its governmental functions. Yet
courts have repeatedly cited Posnainsky, noted the common-law proprietary-governmental distinction, or applied that distinction in considering the immunity of
home-rule municipalities.


 This is yet another reason that the City’s position cannot
be correct.
 
          For these reasons, we reject the City’s arguments based on its home-rule status.
E.      The Authority on Which the City Relies Does Not Control
 
          Finally, the City relies on five opinions to support its argument that municipal
immunity from suit is not derived from the State’s or that a municipality enjoys
immunity from the State’s suit for tort damages.
          The City first relies on Texas Department of Transportation v. Able, claiming
that the majority’s implicit rejection of an argument made by the dissent based on the
State’s “superior-sovereign” status indicates that a superior-sovereign (or derived
immunity) limit upon immunity does not exist. See id., 35 S.W.3d 608 (Tex. 2000). 
Able did not involve a suit by the State against a municipality, however, and the
majority’s opinion did not discuss or reject the dissenting justices’ analysis, but chose
to address the issues presented on different grounds.
          The City next relies on Texas Department of Transportation v. City of Sunset
Valley. See id., 92 S.W.3d 540 (Tex. App.—Austin 2002, pet. granted); see also Tex.
Dep’t of Transp. v. City of Sunset Valley, 8 S.W.3d 727 (Tex. App.—Austin 1999, no
pet.) (earlier interlocutory appeal in same suit). In Sunset Valley, however, TxDOT
asserted that it enjoyed sovereign immunity from the city’s claims, which is the
inverse situation from that existing here. See id., 8 S.W.3d at 732-33. Nothing in the
derivative-immunity law originating with Posnainsky precludes the State from
asserting sovereign immunity from suit when it is sued by its own political
subdivision.
          The City further relies on Guillory v. Port of Houston Authority. See id., 845
S.W.2d 812 (Tex. 1993). In Guillory, the court rejected a private plaintiff’s request
to classify the port authority defendant’s activities as proprietary functions, so that
immunity would not be a bar, because (1) doing so would have required overruling
precedent holding that such districts exercised solely governmental functions and (2)
“the limitation on immunity which Guillory seeks has the same effect as a waiver,”
which the court concluded was a legislative matter. Id. at 814-15. Here, however,
we do not waive or limit existing governmental immunity from suit. Instead, we
recognize that the State is constitutionally empowered to sue and that the City’s
governmental immunity from suits asserting such claims is wholly absent to begin
with.
          Finally, the City relies on two cases in which a non-municipal political
subdivision sued a municipality for damages and in which the court assumed that
immunity from suit or liability applied. See Fort Worth Indep. Sch. Dist. v. City of
Fort Worth, 22 S.W.3d 831, 839-40 (Tex. 2000); City of Houston v. Northwood Mun.
Util. Dist. No. 1, 73 S.W.3d 304, 313 (Tex. App.—Houston [1st Dist.] 2001, pet.
denied). We conclude that the cited cases do not apply in determining whether the
City enjoys immunity from suit here because neither case involves the State’s suing
a political subdivision. Absent a statutory definition to the contrary, political
subdivisions of the State are not, generally speaking, considered “the State.” See
Monsanto Co. v. Cornerstones Mun. Util. Dist., 865 S.W.2d 937, 939-40 (Tex. 1993)
(“The ordinary meaning of ‘state’ . . . envisions an entity having statewide
jurisdiction, rather than an entity having local or limited jurisdiction. . . . ‘[A]
political subdivision differs from a department, board or agency of the State.’”)
(quoting Guar. Petroleum Corp. v. Armstrong, 609 S.W.2d 529, 531 (Tex. 1980)). 
Generally speaking, for a governmental entity to be considered “the State,” the entity
must have statewide jurisdiction, have a governing person or body that is elected in
statewide elections or is appointed by a state official, and lack the power to assess or
to collect taxes. See Monsanto, 865 S.W.2d at 940-41; see also Guar. Petroleum, 609
S.W.2d at 531. In contrast, political subdivisions normally have jurisdiction over
only a portion of the state, have members of their governing body who are elected in
local elections or are appointed by locally elected officials, and have the power to
assess and to collect taxes. See Monsanto, 865 S.W.2d at 940; see also Guar.
Petroleum, 609 S.W.2d at 531. 
          We conclude that these general definitions of “the State” and “political
subdivisions” make sense in the context of determining immunity from suit in
lawsuits between governmental entities, and we adopt these definitions for that
specific context.


 The plaintiffs in the cases cited by the City are political
subdivisions of the State or like entities with limited jurisdiction.


 In contrast, we
do not have before us a suit between subdivisions of the State, but instead a suit by
the State against a political subdivision. The opinions that amici curiae offer in
support of the City’s position are similarly distinguishable because, in them, the
plaintiff is a political subdivision or a private entity or because the defendant or
counter-defendant is a statewide agency.



Conclusion
          We hold that a municipality—even a home-rule one—does not enjoy
governmental immunity from the State’s suit for negligence against it. Just as the
decision to waive or to abrogate immunity from suit lies with the Legislature or the
people through Constitutional amendment, so does the decision to limit the State’s
power to sue and to seek redress upon behalf of the people of Texas in Texas courts. 
Our holding today recognizes that the sovereign State possesses the authority to seek
redress in its courts against its own political subdivisions and that they possess no
blanket immunity from suit in such situations.
          We do not address the State’s wisdom in bringing a claim in tort, but only its
authority to do so. Ultimately, the State, as sovereign, is empowered to seek redress
and to enforce state law. Without such authority, political subdivisions of the State
would adopt the mantle of independent sovereigns over whom the State, through its
chief legal officer, could seek no redress.
          We reverse the order and remand the cause with instructions for the trial court
to reinstate the cause and to deny the City’s jurisdictional plea.
 
 
 
                                                                        Tim Taft
                                                                        Justice
 
Panel consists of Justices Taft, Keyes, and Bland.
Justice Keyes, dissenting.
En banc consideration was requested. See Tex. R. App. P. 41.2(c).
A majority of Justices voted against en banc consideration. See id.
Justice Jennings, dissenting from the denial of en banc consideration.